## JOHNSON v. STATE.

[86 South. 863, No. 21521.]

1. CRIMINAL LAW. *Instructions not supported by evidence erroneous.*
   Instructions which are not supported by the evidence should not be given.

2. HOMICIDE. *Instruction authorizing conviction of manslaughter if killing result of simple negligence held erroneous.*
   In a prosecution for homicide, an instruction which authorizes a conviction of manslaughter if the killing was the result of the simple negligence of defendant while he was attempting to commit a felony is erroneous when the statute upon which the prosecution is based predicates criminality upon culpable negligence, and not upon simple negligence.

Appeal from circuit court of Marshall county.

Hon. J. W. T. Falkner, Jr., Judge.

Matry Johnson was convicted of manslaughter, and he appeals. Reversed and remanded.

*L. A. Smith,* for appellant.

The defendant, it is true, was violating the law in that he had a pistol in his pocket and was shooting craps. Both of these offenses were not *malum per se* but only *Malum prohibitum,* and our court has held in the case of *Dixon* v. *State,* 61 So. 423, that an accidental killing while the slayer was armed, and in that case, undeniably shooting the pistol while drunk, even though the slayer at the time was engaged in misdemeanors, was not manslaughter. In the course of that decision the court very pertinently comments as follows: "It is possible, that had the victim, instead of the defendant, fired her pistol upon the highway (and this is the worst feature of this case from a legal standpoint) and had the defendant received the pistol bullet in his brain, all of us would have found ourselves sympathizing with her, rather than demanding her punishment. And in the instant case suppose the grand jury had indicted Wallace Wall for manslaughter, on the theory that he was culpably negligent to trying to seize Matry Johnson we would be sympathizing with him for becoming involved in trouble for doing what his judgment took to be right. The books have records of such cases. See *Adams* v. *State,* 65 Ind. 565. It is submitted that Wallace Wall had as much to do with the killing of June Johnson as did the appellant, except that appellant had the pistol in his pocket, from which it fell when Wallace Wall seized appellant.

In the *Dixon case, supra,* the court quoted the rule in cases like the one at bar correctly, which is as follows: "When a man, in the execution of one act, by misfortune, or chance, and not designedly, does another act, for which, if he had wilfully committed it, he would be liable to be

punished in that case, if the act he was doing was lawful, or merely *malum prohibitum,* he shall not be punished for the act arising from the misfortune or a chance; but if *malum in se* it is otherwise. The court further says that the principles involved in the case are not new but run through all the books, and to cite authorities is unnecessary.

Let us examine the instant case in the light of the law as announced and approved in the *Dixon case, supra.* At most, there are just two hypotheses on which argument can be based that the pistol in the possession of appellant made the death of his brother manslaughter. The first is that the appellant was breaking the law by being engaged in a crap game and by carrying the pistol. But the courts say that both these misdemeanors being *malum prohibitum,* the mere commission of them is not controlling. So that we may dismiss that theory at once, without further consideration, because Dixon was likewise carrying a pistol, was also drunk, and was also shooting recklessly on the highway, and the bullet he shot glanced and hit the deceased young lady. What a close parallel there is to that case and the one at bar. Here, the appellant was shooting craps, was carrying a pistol, which he did not shoot, but which fell and went off and the bullet glanced and killed his brother. There is no proof whatever to show he was shooting recklessly, except a faint and ridiculous intimation to that effect by the prosecuting witness, who was contradicted by every other witness, without exception who saw what occurred.

The second hypothesis is that he was attempting to draw the pistol in order to shoot Marion Horton, the prosecuting witness. But not a single witness says he was trying to shoot Marion Horton, except Robert Sanders, who stated that he did not see the episode, and only turned around from his task of fire building after the shot had bee fired. Even Marion Horton himself denies that appellant was shooting at him.

The statute under which this indictment was brought is the statute against murder; the statute under which the indictment became the conviction of a charge against appellant was section 1244, Mississippi Code 1906, as follows: "Every other killing of a human being, by the act, procurement or culpable negligence of another, and without authority of law, not provided for in this chapter, shall be manslaughter. Or, if it was not that section, it was section 1236 of the same Code, as follows: "The killing of a human being, without malice, in heat of passion, but in a cruel or unusual manner, without authority of law, and not in necessary self-defense, shall be manslaughter." Or, if it was not that section, then it was section 1237 of the same Code, as follows: "Every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any unlawful act, or after such attempt shall have failed, shall be guilty of manslaughter."

On the first section quoted, *supra*, 1244, the court granted to the state instruction No. 1. Having granted that instruction, the court had no right to grant any other instructions to the jury defining manslaughter in a way inconsistent with instruction No. 1, because section 1244, on which the charge is based specifically provides that "every other killing of a human being by the act, procurement or culpable negligence of another not provided for in this chapter, shall be manslaughter." In other words, all other instructions defining manslaughter necessarily conflict with this definition and the effect is to make the jury feel that they had to get the defendant coming or going. There was no escape. This charge and this statute are the only reasonable bases to presume to be the foundation of the prosecution, yet there are other charges given entirely inconsistent with this one, and not supported by a scintilla of evidence. Charge No. 5 granted the state is a companion charge to this one and evidently based on the same section of the Code, yet that charge tells the jury if the defendant was guilty of negligence in the

handling of his pistol, etc., the jury should find the defendant guilty of manslaughter.    The statute says the negligence must be culpable negligence, yet the court told the jury that mere negligence was only necessary, which denied to the defendant the right of self-defense by proving that even if negligent he was not culpably negligent. There is a vast deal of difference between culpable negligence and mere negligence and to instruct the jury that mere negligence in handling his pistol would justify a conviction, conceivably misled the jury to the prejudice of the defendant.    This error alone should reverse the case. The court should furthermore have instructed the jury that the negligence must be culpable, and that they had a right to decide as to whether the killing was a pure accident or not, and not negligence at all, and the omission to thus instruct the jury was prejudicial error.    *Fitzgerald* v. *State,* 20 So. 966.

The instruction asked by the state must be based on the testimony if grantable at all, and surely it cannot be contended that the court granted defendant a fair trial when practically every definition of manslaughter, even remotely hinting at an inferential similarity of appearance with the facts in this case, was granted against defendant. Evidence could not be found to support them all because they are inconsistent.    Appellant could not be guilty of effecting the death of deceased, without design, while culpably negligent in the handling of a pistol, and at the same time and by the same acts and circumstances be guilty of killing the deceased without malice in the heat of passion in a cruel and unusual manner, not in necessary self-defense with a dangerous weapon. · This is the language of charge No. 2 granted the state.    Of course, the killing of the deceased was in an usual manner, so unusual that there is no counterpart of the case in the law books, exactly.    But surely that unusualness is not sufficient to justify the conviction of appellant, and surely there must be design behind the unusualness especially as it is coupled with the adjective cruel, because cruelty

evinces a depraved and inhuman design. Design is inconsistent with culpable negligence. Appellant certainly had no way of escape from the labyrinth, and the jury could not furnish him a cord to guide him, as they themselves were lost in a maze of cross-roads, and conflicting guide posts, and naturally went estray. It was easy for them to reach the conclusion that the court meant the appellant to be convicted by some rule of law and if it did not exactly fit the case, then take all of them and make a hodge-podge and convict the defendant anyhow.

To further confuse the jury and absolutely close all avenues or justifiable acquitals of appellant, the court granted instruction No. 3 to the state, which told them that if they did not believe appellant killed deceased negligently or if they did not believe that appellant killed deceased in the heat of passion in a cruel and inhuman manner, but if they did believe that he unnecessarily killed deceased while deceased was attempting to commit a felony on appellant, or after such attempt had failed, they could convict the defendant of manslaughter anyhow. Of course, the charge itself did not say these things in the alternative, but the charges are to be taken altogether and taken with charges Nos. 2 and 5; they certainly say it collectively. Yet, aside from that, there is not a word of evidence in the record, to show or even hint that deceased was trying to commit any felony on appellant, or that deceased had attempted to commit any felony on appellant and the attempt had failed. Yet the jury not being lawyers were conceivably led by this charge to believe that it had some pertinency to the facts or it would have not been given, and certainly it must have been cumulative with all the other charges to induce in their minds the belief that they had better convict, because if they did not convict, they would violate some one of the instructions of the court. This did not aid appellant in getting a fair and impartial trial under the law and the evidence.

These instructions manifestly cannot be based on the evidence to support them, and must be taken to have mis-

led the jury. In that even the case should be reversed. *Spradley* v. *State,* 80 Miss. 82; *Rogers* v. *State,* 82 Miss. 479; *Sullivan* v. *State,* 85 Miss. 149; *Boykin* v. *State,* 86 Miss. 481; *Williams* v. *State,* 90 Miss. 319; *Prince* v. *State,* 93 Miss. 263.

The giving of these three separate abstract legal definitions of manslaughter, when the evidence could not support them all, and the failure to modify the word negligence in the fifth instruction by the addition of the word "culpable" confused the jury, and they should not have been so given as abstract propositions. *Browning* v. *State,* 30 Miss. 656.

*Wm. Hemingway,* for appellee.

The refusal of instructions asked by defendant at page 6 was proper. Instruction Number 1 was virtually peremptory. It based the whole question on whether or not the defendant pointed the pistol at Marion Horton or June Johnson, when the defense was that he never pointed it, but that the fall caused it to fire. The next instruction refused, based the whole case on having to pull the trigger of the pistol by which the deceased was killed. That was also equivalent to a peremptory instruction and rightfully refused. The defendant had committed an overt act. He drew his pistol on an unarmed man who was not shown to have been any stronger than he was. Something prevented him from shooting the man with whom he had the difficulty, but the result of his overt act was the killing, whether he pointed the pistol or pulled the trigger. Instruction number 2, page 4, gave the defendant all he was entitled to and probably more.

The state did not ask any instruction on murder so that the accused got his desires as expressed in his motion, that the consideration of the jury be confined to manslaughter. But by his own instruction, number 2, page 4, he referred the consideration of the jury to murder, charging instruction number 6, page 5, to the same effect.

The state's charges defined different kinds of man-slaughter, and each one is based upon evidence introduced in the trial. The jury was not misled by the instruction, number 2, page 4; he referred the consideration of the jury to murder, charging instruction number 6, page 5,. to the same effect. The state's charges defined different kinds of manslaughter. And each one is based upon evidence introduced in the trial. The jury was not misled by the instructions for they found a manslaughter verdict with a recommendation for mercy. It is surely permissible to define crime, the requirement is that it must be based upon the evidence. If not based upon the evidence they should not be given, but their giving is compulsory if there is evidence to support them and they request it. Whether the definition is an abstract one or not the test is as to the evidence to support the instruction. If they were upon abstract questions in this case it must then be determined if they were prejudicial. The record would indicate that the proper verdict was rendered and that the defendant was not prejudiced.

## Legal Points.

The court's attention is directed to 21 Cyc., page 712, paragraph B and 6 on that page. Several Mississippi cases are cited in Notes 49 and 52. It is but a truism to state that actual malice toward an unintended victim is not necessary. The kind of crime will be the same as though defendant had killed the person whom he intended to kill.

This case is to be distinguished from the Dixon case referred to by appellant, because in the Dixon case the crime or offense which led to the killing of the young lady was caused by the act which he was doing which was *malum prohibitum.* The court said, "but if *malum in se,* it is otherwise. In the instant case it was *malum in se* for the defendant to draw a pistol to shoot Marion Horton. He committed an overt act toward a felony. The fact that he was carrying a pistol and was in a game of craps,

both prohibited by law, had nothing to do with the overt act of drawing a pistol to use. This defendant was not justified in using a pistol to repel any threatened attack from Marion Horton. If his pistol had dropped out of his pocket this killing would be an accident and he should be released. The court's attention is directed to vol. 26, Am. Dig., page 327, section 189, which collects the cases showing where the killing was accidental and where negligent. See paragraphs F., G., I., K., S.; See, also, section 23, page 46, Am. Dig., Vol. 26, Century Edition.

Where A. in trying, in a scuffle, to shoot B., by accident shoots C., the crime is manslaughter. *Clarke* v. *State,* 19 Tex. 495. Homicide is not excusable as accidental but is murder where defendant is about to kill a person of his malice aforethought, and deceased, while endeavoring to prevent defendant from carrying out that purpose is killed by the accidental discharge from defendant's pistol. *Wheatley* v. *State,* 39 S. W. 672; *Morris* v. *State,* 61 S. W. 493; See, also, Rul. Cas. Law, page 858, section 161; page 745, section 50.

These authorities state true rule in cases of this kind. The cause of the killing was not the violation of the law or the misdemeanors of carrying concealed weapons and gambling but the drawing of a pistol. It could not have gotten out of the pocket of the defendant of its own accord. That was an overt act. It was very unfortunate that the brother was the victim of his unlawful acts, but his brother is entitled to the protection of the law as any other individual would be.

The court's granting of the instruction on murder for the defense was ignored by the jury and the jury convicted of manslaughter. If the giving of the murder instruction was error, it was error of defendant's own creation. However, it is perfectly proper in a case of this kind to give instructions on both murder and manslaughter and leave the jury to determine which it was. The defense secured the proper instruction on murder and the jury acquitted under that instruction, but found him guilty of man-

slaughter under the state's instruction. The law in this case is against the contentions of the appellant. The jury has passed upon the facts and it is respectfully submitted to the court that there is no reversible error in this case. The jury was evidently moved by compassion for the man for having killed his brother; therefore, they recommended mercy and the court under that recommendation, imposed a short sentence.

W. H. COOK, J., delivered the opinion of the court.

The appellant, Matry Johnson, was indicted for the murder of his brother, June Johnson, and was convicted of manslaughter, and from the judgment sentencing him to the penitentiary for two years, this appeal was prosecuted.

The evidence in this record shows that several negroes, including the appellant and the deceased, June Johnson, were engaged in a crap game in an abandoned cabin. An altercation arose between one Marion Horton and the deceased, and the appellant, who at that time was standing before the fire, intervened in the argument in behalf of his brother, and angry words passed between appellant and Horton. The evidence is conflicting as to what, if any, demonstration was made towards appellant by Horton, but it appears that appellant started to draw his pistol from his pocket. From some cause he dropped the pistol behind him, and when it struck the floor it fired, and the bullet passed through appellant's leg and struck and killed his brother. Exactly what caused the pistol to be dropped does not appear, but appellant testified that Horton started to advance upon him, and that he thereupon pulled his gun, and that Wallace, a bystander, caught his arm, and the pistol was knocked out of his hand. Wallace denied that he caught appellant's arm, and testified that he only put his hand on appellant's breast and told him not to do that. All the witnesses agree that the gun was not pointed at Horton, and it very clearly appears that it was dropped as appellant drew it from his pocket.

No instructions were granted the state submitting the question of murder to the jury, but the court granted numerous instructions containing various statutory definitions of manslaughter. Instructions Nos. 1 and 4 correctly announced the law of manslaughter as applied to the facts in this case, and in addition thereto the court granted two instructions defining manslaughter, which were as follows:

"No. 2. The court charges the jury for the state that manslaughter is the killing of a human being without malice in the heat of passion in a cruel and unusual manner, not in necessary self-defense with a dangerous weapon."

"No. 3. The court charges you for the state that every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony or to do any unlawful act, or after such attempt shall have failed, shall be guilty of manslaughter; and if you believe from the evidence in this case beyond a reasonable doubt that the defendant so killed the deceased, you should convict the defendant of manslaughter."

The principles of law announced in these instructions have no application to the facts in this case. These various definitions of manslaughter were calculated to confuse the minds of the jury, and, since this is a close case on the facts, we cannot say that the error in granting them was harmless.

The court also granted the state an instruction in the following language:

"The court charges the jury for the state that, if they believe from the evidence in the case beyond a reasonable doubt that the defendant was negligent in the handling of his pistol while attempting to unlawfully and feloniously shoot, wound, injure, or kill Marion Horton, he, the defendant, without malice or deliberate design killed his brother June, then in that event you should find the defendant guilty of manslaughter."

This instruction authorizes a conviction if the defendant was guilty of simple negligence in handling his pistol, while the negligence denounced by the statute upon which this prosecution must be based is culpable negligence. There is a marked difference between mere negligence and culpable negligence, and, since the statute does not predicate criminality upon simple negligence, this instruction was erroneous. The language of the instruction is also confusing and misleading.

For the errors herein indicated, this cause is reversed and remanded.

*Reversed and remanded.*