No. 1994.

C. E. WYNNE, ASSIGNEE, *v.* SIMMONS HARDWARE CO. ET AL.

1. ASSIGNEE LIABILITY—ACT MARCH 24, 1879, CONSTRUED—CREDITORS—
ESTOPPEL.—A creditor accepted under the terms of an assigment made under the Act of March 24, 1879, and presented his claim, which was a just one, to the assignee within the time required by law, but failed to verify it by affidavit. It was allowed and filed by the assignee, and remained on file subject to inspection by the creditors for several months.

No objection was raised to it, and the assignee paid the owner its pro rata. In a suit brought by the remaining creditors against the assignee. to recover the sum so paid, *held:* .

(1) The liability of the assignee did not depend upon general principles of equity, but upon the express provisions of the statute under which the assignment was made.

(2) Section 7 of the Act of March 24, 1879, provides that a distinct statement of the claim shall be filed, supported by affidavit that the debt is just, etc., and that no creditor who neglects to file such statement shall take any benefit under the assignment. The language of the legislature is plain, and the judiciary are not at liberty to depart from the words of the statute.

(3) The fact that the assignee made the payment in good faith and with the advice of an attorney, could not shield him from responsibility.

(4) The statute prescribes what diligence creditors should use to prevent any improper distribution of the trust fund, but only imposes its exercise when the claim is so authenticated that the assignee may legally pay it if objection be not made in the manner prescribed.

(5) The mere silence of the creditors, there being no words or acts inducing the assignee to believe that they consented to the payment of the claim, could not estop them from recovering, since the law did not require them to speak.

2. SAME—EXPENDITURES—ASSIGNEE'S LIABILITY.—It is the duty of an assignee to convert the assigned property into money at the earliest practicable period, and not to carry on the business in which his assignor may have been engaged. If he fails to do this and expends money in the conduct of a business, he must be prepared to show that he exercised ordinary prudence and care, otherwise he will be held responsible for the expenditures improperly made.

3. SAME—MISAPPROPRIATED FUNDS—INTEREST.—The effect of a misapplication of funds by an assignee is to withhold from the consenting creditors, who have properly established their claims, the sum so misapplied, and he must, as damages for such withholding, pay a sum equal to legal interest. (Bur. on Ass., 499; Nill on Trusts, 374, 523; Perry on Trusts, 468.)

4. SAME—TAXES ON MORTGAGED PROPERTY—PAYMENT.— Personal property in the hands of an assignee is subject to seizure and sale for taxes due on the realty, just as it was in the hands of the assignor; and an assignee is justified in paying taxes on realty mortgaged beyond its value, the payment being regarded as made for the preservation of the personal property.

5. REMOVAL OF ASSIGNEE—MISMANAGEMENT—EVIDENCE.—See opinion for evidence held sufficient to show such mismanagement of the trust property as justified the removal of an assignee.

APPEAL from Milam. Tried below before the Hon. W. E. Collard.

The opinion states the facts.

*Robert G. Street,* for appellant, cited: Kennedy v. Briere, 45 Texas, 306; Burrell on Assignment, fourth edition, section 459 et seq; Hext v. Porcher, Administrator, 1 Strob., South Carolina Equity, 170; Litchfield v. White, 7 New York, 443; Davis v. Harmon, 21 Gratt., 200; Grey v. Linch, 8 Gill, Maryland, 404; Higgins v. Whitsom, 20 Barb., 141; 29 Michigan, 398, Ellig v. Magley & Sharp, Trustees, 9 California, 683.

*Sayles & Bassett* and *Antony & Wilcox,* for appellees, on removal of the assignee, cited: Tadlock v. Texas Monumental Committee, 21 Texas, 166; Baker v. Chisholm, 3 Texas, 157; Jacobs et al. v. Crum, 4 Texas Law Review, 313; Blum v. Gaines, 57 Texas, 140. On the question of interest they cited: Finley v. Carothers, 9 Texas, 517; Close v. Fields, 13 Texas, 623; Murchison v. Payne, 37 Texas, 306.

STAYTON, ASSOCIATE JUSTICE. Thomas F. Hudson & Son made an assignment, under the statute, for the benefit of such of their creditors as would consent to take under it and release them.

C. E. Wynne was made the assignee, and he qualified and proceeded to administer the insolvent estates.

This action is by many of the consenting creditors to recover from the assignee several sums of money claimed to have been illegally paid out by him in the course of his administration, to remove him therefrom and to have some other person appointed in his stead.

The money is sought for the benefit of all consenting creditors who, in accordance with the statute, filed their claims with the assignee.

The case was tried by the court without a jury, and resulted in a judgment against the assignee for nine thousand seven hundred and seventy dollars and fourteen cents, which sum is made up of three items.

1. The sum of eight thousand four hundred and fifty-two dollars and seventy-two cents, paid to P. J. Willis & Bro., who were creditors of the insolvent estate to the extent of forty thousand dollars, and had consented to take under the assignment, but had not filed their claim, verified by affidavit, as the statute requires.

2. The sum of nine hundred and fifty-five dollars and seventy-

five cents, which the assignee paid out of the trust fund towards the expenses of cultivating a farm, or part of the insolvent estates.

3. Three hundred and sixty-one dollars and sixty-seven cents, which the assignee paid as taxes on real estate which passed to him by the assignment encumbered with liens.

The assignee was also removed for mismanagement of the estate and another person appointed in his stead.

There is no statement of facts, but the conclusions of law and fact contain a very full statement of the case.

The finding as to the claim on which the payment to Willis & Bro. was made is as follows: "Peter J. Willis & Bro. had suit pending against Thomas F. Hudson & Son at the date of the assignment, and prosecuted the same to judgment after the assignment without making Wynne, the assignee, a party, and without his coming into the suit, and they recovered judgment against Hudson & Son on their claim for forty thousand dollars ; it was a valid debt. They accepted under the terms of the assignment, presented their judgment to the assignee within the time required by law, but failed to verify it by affidavit, as required by the assignment act. It was allowed and filed by the assignee, and remained on file subject to inspection by the creditors several months. No objection was made to its payment by any creditor. Just about the time (about the first of October, 1881) the assignee declared dividend among the accepting creditors he discovered, for the first time, that the Willis judgment was not sworn to. He advised with his attorney about paying him, was advised to pay his pro rata, and on the eighth of October, 1881 (as shown by the Willis receipt), he paid them by draft of the Rockdale bank on Kaufman & Runge (regular correspondents of the bank) eight thousand four hundred and fifty-two dollars and seventy-two cents, they giving a receipt in full discharge."

If the liability of the assignee depended upon the application of the general principles of equity, the facts, thus stated, would forbid a recovery on this item.

The claim, on which the payment was made, was a just one; ordinarily a payment under such circumstances would not evidence a failure to use that degree of care and good faith which a trustee must exercise; all the creditors would receive the pro rata contemplated by the assignees and required by the law to be made, and the assignees would be relieved from further liability,

in accordance with the spirit of the instrument through which they, in effect, sought a composition with their creditors.

The rights of the parties, however, do not depend solely upon the application of equitable principles, which may be applied to matters statutory when not in conflict with both the letter and spirit of the statute.

The assignment under which the assignee was acting was made under a statute the express provisions of which must determine the rights and duties of all persons interested in the estate to be administered under it, and the duties of the person to whom was confided the administration of the trust.

The statute, where clear and unambiguous, read in the light of the subject to which it relates, gives the measure of right to all who take benefits under it and prescribes the duties of the trustee.

In matters regulated by statute, if the legislative "intention is expressed in a manner devoid of contradiction and ambiguity, there is no room for interpretation or construction, and the judiciary are not at liberty, on consideration of policy or hardship, to depart from the words of the statute; that they have no right to make exceptions or insert qualifications, however abstract justice or the justice of the particular case may seem to require it."

The statute under which the assignee was acting provides that "every creditor consenting to an assignment shall, within six months from the time of the first publication of the notice of appointment of the assignee, file with such assignee a distinct statement of the particular nature and amount of his claim against the debtor, which shall be supported by an affidavit of the creditor, his agent or attorney, that the statement is true, that the debt is just, and that there are no credits or offsets that should be allowed against the claim except as shown by the statement, *and no creditor shall take any benefit under any assignment whatever who neglects to file such statement."* (Act March 24, 1879, sec. 7.)

The statement required to be filed is unsupported by the affidavit of the creditor, and the plain declaration of the legislature is that if the *creditor* fails to file *such* a statement he shall not take any benefit under the assignment. It is not enough that he be a creditor; for the statute in terms assumes that he may be this and still not entitled to take. It is not enough that his claim is

entirely just and subject to no diminution by reason of the existence of any fact.

It is not enough that the failure to authenticate a claim, entirely just, was the result of inadvertence or negligence, for the statute, in terms, recognizes the fact that the failure to authenticate a claim, as required, may result from just such causes, and still declared that the creditor so negligent shall take nothing under the assignment.

It is urged that the plaintiffs are estopped to now question the rights of the assignee to make the payment to Willis & Bro.; because the claim was filed with the assignee, subject to the inspection of the other creditors, and no objection urged to its payment until after the payment was made in good faith upon the advice of counsel.

It is urged that the plaintiffs should have resisted the payment.

The twelfth section of the Act provides that: "The statement of a creditor, *verified* and filed with the assignee, as *hereinbefore provided*, shall be sufficient, prima facie evidence to justify the assignee in allowing it as a valid claim against the estate, and it shall be allowed," etc.

The Act further provides that the assignee or any creditor may test the validity of a claim so filed within a given time. Other creditors could not have believed, even if they certainly knew that the Willis claim had been filed, as it was, with the assignee, that the latter, in the face of the statute, which, in effect, forbade him to do so, would pay it, and were not bound to resist it, when they had no reason to expect him to violate the law.

If the plaintiffs, by words or acts, had induced the assignee to believe that they consented to such payment, and thus influenced his action, it might well be held that they could not now be heard to complain of his act, illegal though it was; but their silence alone, where the law did not require them to speak, can not operate to defeat a remedy.

The statute prescribes what diligence they should use to prevent an improper distribution of the trust fund, but does not impose the exercise of this unless the claim be so authenticated that the assignee may legally pay it if objection be not made in the manner prescribed.

The record tends to show that the assignee made the payment in good faith, but this can not shield him from responsibility for an act which the statute forbade.

The finding of the court in reference to the two other items is that

"The assignee ran one of the assigned farms, the Wells farm, in 1881, and furnished supplies for it out of the funds of the estate to the amount of nine hundred and fifty-five dollars and seventy-five cents and paid taxes on the real estate, three hundred and sixty-one dollars and sixty-seven cents. All these lands were covered by deeds of trust for more than their value, as estimated by the assignee in his circular letter to the creditors. Thomas F. Hudson was in possession of this farm, and after the sale by the assignee in May, 1881, got the crops and rents of the Wells farm by some arrangement with Kauffman & Runge, who were the purchasers. * * * * The assignee estimated the value of the real estate, in a circular letter addressed to the creditors before acceptance, at twenty-six thousand three hundred and fifty-three dollars, subject to mortgages for thirty-three thousand dollars. The assignee did not personally run the Wells farm or other out lands before the sale, and the sale occurred before the crops matured. I find that there was culpable negligence on the part of the assignee in supplying the Wells farm and in paying the taxes on the real estate securities for unpresented claims. Such expenditure inured to the benefit of the cestuis que trust, and not to the estate."

Cases may arise in which it would be proper for an assignee to expend trust funds in his hands, even in conducting the business of a farm, as when there was a growing crop at the time the assignment was made, which ordinary prudence would dictate to him should be pursued; but no such facts appear in this case, for the assignment was made January 22, 1881.

It is the duty of such an assignee to convert the assigned property into money at the earliest practicable period, and not to carry on the business in which his assignor may have been engaged; and, if he fails to do this, and takes the responsibility of expending money in the conduct of a business, he must be prepared to show that in this he exercised that ordinary prudence and care incumbent on such a trustee; otherwise he must be held responsible for the expenditure improperly made.

The finding of the court below as to this item is fully sustained by the facts on which he bases it.

The Constitution, and laws made in pursuance thereof, make all property, both real and personal, subject to seizure and sale for the *payment of all taxes and penalties due by the delinquent taxed persons.* (Constitution, art. 8, sec. 15; Rev. Stat., art. 4746; General Laws 1879, page 46.)

Under the laws, made in pursuance of the Constitution, the tax collector may sieze and sell personal property of the delinquent, for the taxes due upon real property as well as personal, before resorting to a sale of the realty.

An assignee of an insolvent estate, does not stand as would a purchaser, and in reference to the payment of taxes it would seem that the property in his hands would be liable for taxes, just as it was in the hands of the assignor.

The act regulating assignments makes no provision for the payment of taxes; but had it attempted to relieve the personal property from liability for the taxes due upon the realty as well as the personalty, accruing even before the assignment was made, it would seem that its provisions would be nugatory under the section of the Constitution to which we have referred.

We are further of the opinion that the State, counties and other organizations authorized to levy and collect taxes, are not, within the meaning of the assignment law, creditors who must establish their claims in the manner prescribed by the act.

To subject them to such a mode of collecting taxes would be antagonistic to the whole theory of taxation.

The personal property in the hands of the assignee being subject to seizure and sale for taxes due on the realty, we are of the opinion that the assignee was justified in paying them.

The payment may be regarded as having been made for the preservation of the personal property.

The appellees sought to recover interest on the sums improperly disbursed by the assignee, from the time the disbursement was made, and the court below refused to allow it.

There is an assignment of error by the plaintiffs presenting this question.

The practical effect of the misappropriation of funds by the assignee was to withhold from the consenting creditors who had properly established their claims the sum so misapplied, and we understand the rule in such cases to be that the trustee must, as damages for such withholding, pay a sum equal to legal interest. (Burr. on Ass., 499; Nill on Trustees, 374, 523; Perry on Trusts, 468.) Many cases bearing upon this question are cited by these authors.

We do not deem it necessary to discuss the facts, other than such as have been already incidentally stated bearing on the sufficiency of the evidence to justify the finding of the court be-

low that the assignee was not a suitable person to carry out the purposes of the assignment.

There is nothing to show want of integrity in the assignee, but the evidence is ample to show such mismanagement of the trust property as to justify the finding that he was an unsuitable person to execute the trust.

. The judgment of the court below will be revised and here rendered in accordance with the judgment of the court below, except that the judgment rendered by the district court against the appellant will he reduced to the sum of nine thousand four hundred and eight dollars and forty-seven cents, which shall be made to bear interest at the rate of eight per cent per annum, from the eighth day of October, 1881, which is the date at which the sum of nine thousand four hundred and eight dollars and forty-seven cents should have been paid to the creditors entitled to it.

Judgment will also be entered against the plaintiffs for one-half of the costs of this appeal, and against the defendant for the residue of such costs.

· It is so ordered.

*Reversed and rendered.*

Opinion delivered October 22, 1886.