

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

September 25, 1951

Hon. Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

Dear Mr. Calvert:

Opinion No. V-1293

Re: Validity of tax lien on mineral estate after reversion to remainderman.

Your letter requesting our opinion upon the above captioned matter reads as follows:

"We are enclosing a letter written to this Department on May 20th by W. W. Anderson, Tax Assessor-Collector, Yoakum County, Plains, Texas; a copy of a letter written to Mr. Anderson by the First National Bank in Dallas, Texas, on May 17, 1951; and a copy of a letter written to Mr. W. F. Worthington, Vice President of the First National Bank in Dallas, Texas, by Worsham, Forsythe & Riley in regard to the possible cancellation of taxes charged against oil and gas leases and a royalty interest for the years 1936 and 1937 on Sections 396, 397, 420 and 421 in Yoakum County. You will note from the correspondence that a reservation of the mineral interest was limited to a period of fifteen years, after which the interest reverted to the fee owners. Since the reservation of fifteen years has expired, we have been requested to advise the Tax Assessor-Collector whether or not the taxes are collectible, and whether the original tax lien against the mineral interest is now a lien against the minerals now held by the remainderman.

"Will you please advise whether or not the taxes are collectible. This Department has made no ruling on the question and so far as we know there is no litigation pending that will determine the matter."

Section 15 of Article VIII of the Texas Constitution provides:

"The annual assessment made upon landed property shall be a special lien thereon; and all property, both real and personal, belonging to any delinquent taxpayer shall be liable to seizure and sale for the payment of all the taxes and penalties due by such delinquent; and

such property may be sold for the payment of the taxes
and penalties due by such delinquent, under such regu-
lations as the Legislature may provide."

Under the above section of the Constitution and the
statutes made in pursuance thereto, the tax collector may seize
and sell personal property of the delinquent for the taxes due on
real property, as well as personal, before resorting to the sale of
the realty. Wynne v. Simmons Hardware Co., 67 Tex. 40, 1 S.W.
568 (1886). The tax may be collected by sale of the particular
property on which it is assessed by enforcing the lien, or by the
sale of that or other property under a judgment of the court. City
of Henrietta v. Eustis, 87 Tex. 14, 26 S.W. 619 (1894).

Minerals contained in land when severed from the land
by a proper conveyance may be taxed separately from the land it-
self. State v. Downman, 134 S.W. 787 (Tex. Civ. App. 1911, error
ref.).

You are therefore advised, in answer to the first por-
tion of your question, that taxes assessed against a mineral inter-
est, whether it is a working interest or a royalty interest, although
the mineral interest was limited to a period of 15 years by virtue
of a mineral reservation which has now expired, are collectible as
the personal obligation of the person to whom assessed and should
not be canceled by the tax assessor-collector.

The letter referred to in your opinion request sets
forth the following fact situation:

"It appears that the taxes are delinquent for the
years 1936 and 1937. However, after reviewing the file
on this matter, I do not believe that these taxes can now
be legally assessed against these mineral interests
which are owned by Mrs. Lillian Shook Cunningham and
Mr. Robert B. Shook, for the following reason. The
minerals that are assessed are the minerals that were
reserved to R. H. Wellborn in a deed dated May 1, 1933,
from R. H. Wellborn to Lillian Shook Cunningham, et
al. This reservation of minerals was only for a period
of 15 years from May 1, 1933, and unless oil, gas, or
other minerals were discovered within said 15-year
period and then for so long thereafter as said minerals
were produced in paying quantities. It appears that no
production of minerals of any kind or character was
ever secured from such land and by the expressed terms
of the reservation in the deed, such one-half reserva-
tion of minerals in favor of R. H. Wellborn automatical-
ly expired on May 1, 1948. By reason of this fact, the

> lien that the Tax Assessor may have had on such min-
> eral interests likewise would have expired on May 1,
> 1948. In other words, the lien for the taxes could not
> be any greater than the interest upon which it was as-
> sessed. The Tax Collector could, when these taxes
> became delinquent in 1936 and 1937, have foreclosed
> against R. H. Wellborn, or his assigns, upon the unex-
> pired term of these interests, but could not have fore-
> closed upon any greater interest. Since these inter-
> ests all expired on May 1, 1948, the lien for taxes can-
> not in my opinion be assessed against the Shooks, who
> now own the property, because the assessment was not
> made against the Shooks originally or against their in-
> terest, but simply against the limited term of 15 years
> reserved by R. H. Wellborn."

It appears from our investigation that there are two
distinct systems of ad valorem taxation in effect in different states.
In a portion of the states the rule announced by the courts in con-
struing the statutes of those states is that lands shall be valued as
a whole, irrespective of the separate estates that individuals may
own in them. In those states the person who enjoys the possession
of the real estate, as well as the profits, is charged with the tax.
In other states, by reason of the wording of the taxing statutes, sep-
arate estates in real estate are separately assessed and collected.
3 Cooley, Taxation (4th Ed. 1924) 2936. In stating the rules, Cooley
uses the following language:

> "The legislature has power to provide either that
> the tax-sale shall create a new title cutting off all prior
> liens, encumbrances and interests, or to provide that
> the tax purchaser shall acquire the interest only of the
> person in whose name the land was assessed or of the
> real owner. Observing the statutory directions and
> precautions, and the principles of the common law and
> of public policy, to which reference has been made, the
> officer may transfer to the purchaser the full interest
> in the land which has been assessed, and may convey
> a complete and perfect title if such is the provision of
> law on the subject, as in many states is the case. [ Here
> are cited numerous cases from various states; however,
> Texas is not cited as a state that comes within that cat-
> egory.] Indeed, it has been said that 'The prevailing
> opinion seems to be that a tax title is a new title, and
> not merely the sum of old titles.' Generally a tax-title
> divests all interests in the land sold and vests in the
> grantee an independent and paramount title. Where the
> whole title is sold it cuts off and divests estates in re-
> mainder or reversion, rent charges, trust estates, home-

stead interests, inchoate rights of dower, mortgages and other encumbrances, judgment liens, and even back taxes and tax-titles, unless other provision is made; but in some states the sale is only of the title which the person taxed had at the time, while in others nothing passes but the title and interest of the parties who were made defendants to the judicial proceedings anterior to the sale. Where the distinct interests of different owners are assessed separately, a sale of the land for a tax against one does not cut off the interests of others. . . ."

The rule as to the nature or quantum of estate acquired by the purchaser at a tax sale is stated in an annotation in 75 A.L.R. 416 as follows:

"There are two opposing theories as to the effect of a tax sale and the nature or quantum of estate acquired by the purchaser. They are thus summarized by Malcolm, J., in Philippine Islands v. Adriano (1920) 41 Philippine, 112: 'There are two distinct doctrines on the subject of what passes by the sale of property for back taxes. In many states where the tax is a charge on the land alone, where no resort in any event is contemplated against the owner or his personal estate, and where the proceeding is strictly in rem, the title conveyed by a sale for nonpayment of taxes is not merely the title of the person who had been assessed for the taxes and had neglected to pay them, but a new and paramount title to the land in fee simple absolute, created by an independent grant from the sovereign, and free from all equities and encumbrances existing prior to the sale upon the title of the previous owner. According to this view, the tax title is a breaking up of all titles, and operates not to support but to destroy them. It is a new and perfect title emanating from the state, and not merely the sum of old titles. The second doctrine, prevailing in other jurisdictions where the proceedings for the collection of taxes upon real estate are looked upon as in personam, is that the purchaser at the tax sale gets no better title than was held by the person assessed. According to this view, where the law requires the land to be listed in the name of the owner, provides for a personal demand for the tax, and, in case of default, authorizes the seizure of the personal property of the delinquent in satisfaction of the tax, and permits a sale of the land only when all other remedies have been exhausted, the title is a derivative one, and the purchaser acquires only the apparent interest, whatever it is, of the tax delinquent.' "

In State v. Campbell, 41 S.W. 937, 938 (Tenn. Sup. 1897), there is a complete discussion of these two systems of ad valorem taxation. The Tennessee Supreme Court, applying the derivative title and separate assessment rule, concludes:

"So, then, the purchaser at a tax sale can only acquire such interest derivatively as the tax debtor had in the land. It is obvious the state cannot sell the interests of remainder-men in such lands, against whom no tax has been assessed. If the state can sell such interests it is obvious the purchaser at such tax sale would acquire all interests the state could sell. But we have seen that, under the ruling in City of Nashville v. Cowan, the purchaser only acquires such interest as the tax delinquent owned in the land, 'without prejudice to the rights of other parties, such as remainder-men, mortgagees, or other incumbrancers.' Again, it is settled in this state that a tax on land, when imposed, becomes a debt of the taxpayer, for which a suit may be brought as upon any other debt. Mayor, etc., v. McKee, 2 Yerg. 167; Rutledge v. Fogg, 3 Cold. 568."

We have been unable to find any Texas decisions directly in point upon the question before us, but by reason of the following statutes and decisions of this State, it is our opinion that Texas has ranged itself with those states whose legislation has been framed to give the purchaser at a tax sale only a derivative title. We are aware of the opinion by the Supreme Court of Texas in Danciger v. State, 140 Tex. 252, 166 S.W.2d 914 (1942), which held that the State would not be entitled to have a sale under execution of other property of the tax debtor until it had exhausted its remedy under the order of sale. However, we do not deem this to be controlling in that in Texas a suit for ad valorem taxes is not a suit strictly in rem, and a personal judgment can be secured against the tax debtor and any property of the tax debtor subject to execution may be levied upon.

Section 7 of Article 7345b, V.C.S., provides:

"In the case of foreclosure, an order of sale shall issue, and, except as herein otherwise provided, the land shall be sold thereunder as in other cases of foreclosure of tax liens."

Article 7328, V.C.S., provides, in part, as follows:

". . . and in case of foreclosure an order of sale shall issue and the land sold thereunder as in other cases of foreclosure; . . ."

Article 3816, V.C.S., provides:

"When a sale has been made and the terms thereof complied with, the officer shall execute and deliver to the purchaser a conveyance of all the right, title, interest and claim which the defendant in execution had in and to the property sold."

The regular printed form of deeds used in tax foreclosure suits in Texas contains the provision that only the right, title and interest of the defendant in the tax suit is being conveyed. This clearly shows the construction placed upon our taxation statutes by those charged with the collection of ad valorem taxes.

The opinion of the Supreme Court of Texas in the early case of Yenda v. Wheeler, 9 Tex. 408 (1853), clearly indicates that the purchaser at a tax sale in Texas receives only a derivative title. This case has been followed in principle by other Texas cases. Sanchez v. Hillyer-Deutsch-Jarratt Co., 27 S.W.2d 634 (Tex. Civ. App. 1930, error ref.). The court in Griggs v. Montgomery, 22 S.W.2d 688, 692 (Tex. Civ. App. 1929), stated:

"It was recited in the petition of the state, upon which the tax judgment was based, 'that the defendants are now in possession of and are claiming and asserting ownership to all the land set out and described.' We agree with appellees that the state and all parties holding under the tax judgment are bound by all the recitations in this petition, and that appellant has not acquired, under the foreclosure sale, the title of any person not a party to that proceeding, and not embraced within the term 'unknown owners,' nor the title of any owner in actual or visible possession of the land."

It is clear from the above cited Texas cases, as well as from the wording of our tax statutes, that a tax foreclosure suit in Texas is not strictly in rem; that a purchaser at a tax foreclosure sale in Texas does not receive a new and paramount title to the land in fee simple absolute, created by an independent grant from the sovereign, free from all equities and encumbrances upon the title of the previous owner, existing prior to the sale.

Where there has been a severance of the minerals in a tract of land for a limited term of years, either by deed or reservation, there are created two separate and distinct interests in the land which are subject to taxation. Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021 (1934). The owner of the minerals for the term of years should render his interest for taxation at its true market value, which value would be less than if he owned the minerals in fee. At the same time the owner of the fee should render

the surface for taxation, together with the value of the reversionary interest that he owns in the minerals. The owner of the surface would have the right to dispose of such reversionary interest, and if he alienated it, the person acquiring the reversionary interest would have an interest in real estate subject to taxation. It is apparent that the surface estate in the land would have a greater value by reason of the limitation imposed upon the mineral interest, in that the mineral interest would revert to the owner of the surface upon the termination of the term of years imposed upon the mineral estate. The value of the mineral estate will necessarily decrease as its term nears an end, while at the same time the value of the surface will be enhanced in a like amount. These facts should be taken into consideration in valuing the mineral estate as well as the surface estate. O'Connor v. Quintana Petroleum Co., 134 Tex. 179, 133 S.W.2d 112 (1939).

Article 7146, V.C.S., provides:

"Real property for the purpose of taxation, shall be construed to include the land itself, whether laid out in town lots or otherwise, and all buildings, structures and improvements, or other fixtures of whatsoever kind thereon, and all the rights and privileges belonging or in any wise appertaining thereto, and all mines, minerals, quarries and fossils in and under the same."

The Commission of Appeals in Electra Independent School District v. W. T. Waggoner Estate, 140 Tex. 483, 168 S.W. 2d 645, 649 (1943), in an opinion adopted by the Supreme Court, after quoting Article 7146, supra, said:

"Under the statute quoted it has been held that a conveyance of oil and gas in place in the ground is an interest in realty which is subject to taxation in the hands of the grantee. Texas Co. v. Daugherty, 107 Tex. 226, 176 S.W. 717, L.R.A. 1917F, 989; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566. It has been held that minerals contained in land when severed from the land by a proper conveyance may be taxed separately from the land itself. State v. Downman, Tex. Civ. App., 134 S.W. 787, writ refused; Downman v. State, 231 U.S. 353, 356, 357, 34 S.Ct. 62, 58 L.Ed. 265. Royalty interests in oil and gas acquired under instruments conveying minerals in place are taxable as realty. Federal Royalty Co. v. State, Tex. Civ. App., 42 S.W.2d 670; Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021; Id., 124 Tex. 290, 80 S. W.2d 741.

Hon. Robert S. Galvert, Page 8 (V-1293)

"Article 7164 of Vernon's Annotated Civil Statutes of Texas, provides how real estate should be rendered for taxation. '1. The name of the owner, abstract number, number of survey, the number of the certificate, the name of the original grantee, the number of acres, and the true and full value thereof. 2. . . . '

"It has been decided by this Court that the lien provided by Section 15 of Article 8 of the Constitution of Texas, Vernon's Ann. St., and declaratory statutes enacted pursuant thereto attaches only to each separate tract or parcel of land for the taxes assessed against it. Richey v. Moor, 112 Tex. 493, 249 S.W. 172. . . . "

Article 7328, V.C.S., provides, in part:

"The proper persons, including all record lien holders, shall be made parties defendant in such suit . . . "

Where the mineral interest was separately assessed against the owner and the reversionary interest was or should have been separately assessed against the remainderman, the lien provided for in Section 15 of Article VIII of the Texas Constitution would attach only to the mineral interest for the taxes assessed against it; and the owner of the minerals, together with the record lien holders, if any, would be the only proper or necessary parties in a suit to foreclose the constitutional and statutory lien. The remainderman would be neither a proper nor a necessary party. In such a suit, if brought by the State before the expiration of the mineral estate, the purchaser at the tax foreclosure would acquire only whatever interest the defendant had in the minerals, and upon the expiration of the mineral estate his tax title would terminate. If the State delays bringing a suit against the person who owned a limited mineral estate until such time as the minerals had passed to the remainderman, the State thereby loses its lien upon the property.

You are therefore advised, in answer to the second portion of your question, that the tax lien against a mineral interest which was limited to a term of 15 years or as long thereafter as oil and gas is being produced from the land, which mineral interest has expired by its own terms, is not a lien that can be enforced against the minerals held by the remainderman.

## SUMMARY

Taxes assessed against mineral interests severed from the fee for a limited duration should not be canceled after the expiration of the mineral term, as the owner is personally liable for the taxes. Tex. Const. Art. VIII, Sec. 15. The tax lien against a mineral interest severed from the fee for a limited duration cannot be enforced against the minerals owned and held by the remainderman, either before or after the mineral interest has expired by its own terms.

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

By W. V. Geppert
W. V. Geppert
Assistant

Everett Hutchinson
Executive Assistant

Price Daniel
Attorney General

WVG/mwb