Ernest HOENIG and Union National
Bank, Texas, Appellants,

v.

TEXAS COMMERCE BANK, N.A.,
Trustee for The Mamie M.
Garcia Trust, Appellee.

No. 04–95–00407–CV.

Court of Appeals of Texas,
San Antonio.

July 24, 1996.

Rehearing Overruled Aug. 20, 1996.

Harry J. Skeins, Jr., Skeins & Williamson, P.C., Jeffrey I. Kavy, Michael B. Clark, Cle-mens & Spencer, San Antonio, for Appellants.

David B. West, Toni D. Driver, Cox & Smith Incorporated, San Antonio, for Appellee.

Before CHAPA, HARDBERGER and GREEN, JJ.

## OPINION

GREEN, Justice.

Union National Bank ("UNB"), as original trustee of the Mamie Garcia Trust ("Trust"), and Ernest Hoenig, former lessee of Trust property, appeal a judgment in favor of Texas Commerce Bank, N.A.[1] ("Trustee"), current trustee of the Mamie Garcia Trust. The trial court held that Hoenig wrongfully converted funds due the Trust and that UNB was "culpably negligent" in failing to discover and/or prevent the conversion of funds. We affirm.

In 1976, Hoenig rented a certain piece of downtown Laredo property at the corner of Iturbide and Salinas streets from Mamie Garcia. The lease provided a 5-year primary term and two five-year renewal terms. During 1977, Hoenig added improvements to the property, subletting the three existing retail stores which fronted on Iturbide Street (the Iturbide property) plus the three added rental spaces which faced Salinas Street (the Salinas property). In 1978, Garcia died; under the terms of her will, UNB was named trustee for a trust which encompassed various properties, including the property being leased by Hoenig at the intersection of Iturbide and Salinas streets. Hoenig exercised both of the option periods provided in the original lease.

In 1991, Trustee approached UNB soliciting trust management business. The parties agreed that Trustee would assume management of various trust portfolios, including the Mamie Garcia Trust. Trustee made inspections of the trust property before and after assuming responsibility for the Trust based on information provided to it by UNB. During the management of the Garcia Trust,

---

1. At the time the events in question occurred what is now Texas Commerce Bank was called Ameritrust. Future reference will be to Texas Commerce Bank, N.A.

UNB was unaware that the Salinas property belonged to the Trust. Consequently, UNB did not inform Trustee about the existence of the Salinas stores. Trustee discovered that the Salinas stores belonged to the Trust several months after assuming its duties.

As the end of the second renewal period approached in 1991, Hoenig sought to negotiate a new lease with the UNB trust department. The bank declined, and notified Hoenig that the lease would expire according to its terms at the end of May 1991. UNB notified the Iturbide tenants to pay future rentals to the bank, but being unaware of the existence of the Salinas stores UNB failed to inform those tenants. The Iturbide tenants paid the bank as directed, but Hoenig continued to collect rent from the Salinas tenants.

The court signed an order replacing UNB with Texas Commerce Bank as trustee on December 31, 1991. Because of several missteps in transferring the trust portfolio, UNB continued to collect the Iturbide rents for the first three months of 1992. Texas Commerce Bank finally assumed its trustee duties in April 1992. Trustee first visited the property as trustee in June 1992 and discovered the Salinas stores in September. After ascertaining the status of the property, Trustee took action to prevent Hoenig from continuing to collect rent from the Salinas tenants. Hoenig collected rent from the Salinas tenant from May 31, 1991 when his lease expired until October 31, 1992 when Trustee forced him to stop doing so. Trustee sued Hoenig and UNB for recovery of the loss to the trust of the rentals collected from the Salinas properties after Hoenig's lease expired.

■ UNB's first two points of error complain that the trial court used an incorrect definition for culpable negligence, and erred in entering judgment against it because it was not culpably negligent. The term "culpable negligence" finds its way into this case from Mamie Garcia's testamentary trust documents, which purport to absolve the appointed trustee of any loss to the trust estate, "save culpable negligence or intentional misdeed."

The trial court defined "culpable negligence" as the "failure to use ordinary care, such as a prudent trustee, similarly situated, would have used in the same or similar circumstances"—an ordinary negligence definition. UNB argues, however, that by use of the modifier "culpable" in conjunction with the term "negligence" in her testamentary trust instrument, Mamie Garcia intended that more than the mere failure to use ordinary care was required to expose her trustee to liability for its acts. UNB says, then, that culpable negligence must mean the same thing as gross negligence and the trial court should therefore have used the more difficult-to-prove gross negligence definition.

In support of its argument that a duty of care higher than ordinary care was intended, UNB cites *James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.,* 160 Tex. 617, 335 S.W.2d 371 (1960). There, the court stated that if Taylor's actions were negligent, equity was available, but that if his conduct was *culpably* negligent, equity was not available. UNB argues that the court, without saying so directly, treated the terms differently, with culpable negligence being more blameworthy. But it should be noted that the court in *Taylor* did not, either directly or indirectly, purport to equate gross negligence with culpable negligence.

UNB also points to a number of decisions in other jurisdictions which hold that culpable negligence represents a higher duty of care than ordinary negligence. *Ingram v. Pettit,* 340 So.2d 922 (Fla.1976); *Hurter v. Larrabee,* 224 Mass. 218, 112 N.E. 613 (1916); *Warren v. New York Tel. Co.,* 70 Misc.2d 794, 335 N.Y.S.2d 25 (1972); *Bettencourt v. Pride Well Serv., Inc.,* 735 P.2d 722 (Wyo.1987); *Thomas v. Milfelt,* 222 S.W.2d 359 (Mo.App.1949); *State v. Davis,* 66 N.C.App. 334, 311 S.E.2d 311 (1984). Those jurisdictions appear to define "culpable negligence" to mean the rough equivalent of what we recognize in Texas as gross negligence.[2]

---

**2.** Considering "culpable negligence," the Florida courts have stated:

The character of negligence necessary to sustain an award of punitive damages must be of a gross and flagrant character evidencing reck-

Texas, however, has maintained a traditional attitude toward the meaning of negligence and gross negligence. And we are aware of no other terminology utilized in this State to describe what is otherwise familiar to lawyers as either ordinary negligence or gross negligence. Yet, UNB asks this court to hold that the term "culpable negligence", at least as used in this case, means the same thing as "gross negligence."

In response, the Trustee relies on two very old Texas cases for the premise that "culpable negligence" and "negligence" have but one and the same meaning. *International & G.N.R. Co. v. Hester,* 72 Tex. 40, 11 S.W. 1041, 1042 (1888) (equates negligence with "culpable fault"); *Wynne v. Simmons Hardware Co.,* 67 Tex. 40, 1 S.W. 568, 570–71 (1886) (uses the term "culpable negligence" while applying the ordinary care standard). The fact that the Trustee has had to look back at more than 100 years of case law to find only two cases utilizing the term "culpable" in the context of negligence would appear to be some evidence of the reluctance of Texas courts to depart from what is traditionally understood as the ordinary meaning of negligence.

Prevailing definitions of "culpable" do not support UNB's argument that, when used with negligence, it implies a higher duty of care. "Culpable" has been defined variously as: "responsible for wrong or error; deserving censure; blameworthy," THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 321 (1969); "meriting condemnation or blame esp. as wrong or harmful" (as illustrated by "[culpable] negligence"), MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 282 (10th ed. 1993); and "blamable; censurable; criminal; involving the breach of a legal duty or the commission of a fault. That which is deserving of moral blame." BLACK'S LAW DICTIONARY 341 (5th ed. 1979). Moreover, the phrase "culpable negligence" has been defined as the "failure to exercise that degree of care rendered appropriate by the

particular circumstances, and which a man of ordinary prudence in the same situation and with equal experience would not have omitted." BLACK'S LAW DICTIONARY 931 (5th ed. 1979).

The above authorities contra-indicate the conclusion that prefacing the term "negligence" with the word "culpable" adds anything of legal substance. The ordinary meaning of the term culpable does not implicate a higher, or gross negligence, standard of care. We conclude that "culpable negligence" means the same as "actionable negligence." *See* BLACK'S LAW DICTIONARY 28 (5th ed. 1979). Accordingly, we decline UNB's invitation to be the first court in this State to equate "culpable negligence" with gross negligence. UNB's first two points of error are overruled.

■ Alternatively, in its third point of error, UNB insists that even if it is held to the ordinary negligence standard of care, the lost rental revenue to the Trust was not proximately caused by UNB's failure to discover the Salinas stores but, rather, was as a result of Hoenig's intentional misconduct, thereby interjecting an intervening event into the chain of causation cutting off UNB's liability.

■ A party's conduct is the proximate cause of injury if the action of the party is a substantial factor in bringing about the injury and a person of ordinary intelligence could have anticipated the dangers created for others by his conduct, whether the precise type of danger can be foreseen or not. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 549–51 (Tex.1985). However, it is also true that the criminal or intentionally tortious conduct of a third party will be a superseding cause of harm unless the party realized at the time of his negligent conduct that such action by a third party was possible or likely. *Berry Property Management v. Bliskey,* 850 S.W.2d 644, 656 (Tex.App.—Corpus Christi 1993, writ dism'd by agr.). Determination of proximate cause is a ques-

less disregard of human life or the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless dis-

regard of the safety and welfare of the public, or that reckless indifference to the rights of others, which is equivalent to an intentional violation of them.
*Ojus Industries v. Brannam,* 351 So.2d 1055, 1056–57 (Fla.Dist.Ct.App.1977).

tion for the trier of fact. *Ramey v. Collagen Corp.*, 821 S.W.2d 208, 212 (Tex.App.—Houston [14th Dist.] 1991, writ denied).

■ When it assumed its trust duties, UNB was duty bound to inventory the property of the trust and to manage trust property in such a way as to maximize income and value appreciation. In doing so, once Hoenig's lease expired, UNB was obligated to give notice to the sub-tenants that further rental payments were to be made to UNB. There was evidence before the trial court that UNB failed to adequately inventory and supervise the property and failed to give proper and timely notice to the sub-tenants concerning future rental payments. Furthermore, a professional trustee/property manager such as UNB would realize that it is "possible or likely" that injury would occur if it did not exercise proper oversight of a managed property, or if it carelessly inventoried trust property. The evidence supports the finding that, under the circumstances, the consequent losses to the trust were proximately caused by UNB's omissions. And because Hoenig's misconduct was a foreseeable consequence of UNB's inattentiveness, UNB's liability is not superseded by his actions. Point of error three is overruled.

■ UNB's fourth point complains that the trial court erred in finding a breach of trust. UNB contends that the trust instrument controls over the Texas Trust Code in establishing the standard of care owed by a trustee, insisting that Garcia's will did, in fact, establish a different, higher threshold (i.e. "culpable negligence") under which the trustee will not have breached its trust to the beneficiaries, unless the trustee is accountable for more than ordinary negligence. Also, without explaining what, if any, difference it makes, UNB contends that holding it to the standard of a "prudent trustee, similarly situated" is erroneous and presumably harmful.

However, UNB argues the degree of negligence (i.e. ordinary versus gross negligence) and never addresses the central consideration—whether UNB as the trustee had a duty to perform certain functions on behalf of the Trust and failed to do so. According to the Trust Code, the trustee is responsible to the beneficiary for the trust property, including its management, supervision, and safeguarding. Tex.Prop.Code Ann. §§ 113.056, 114.001 (Vernon 1995). The failure to discover the existence of trust property of the kind overlooked in this case, and to fail to include it in the trust inventory, to make the beneficiaries aware of it, or to collect rent for its use is a conspicuous breach of UNB's duty as trustee.

■ UNB further argues that the trial court erred by finding that "culpable negligence is the failure to use ordinary care such as a prudent trustee, similarly situated, would have used." UNB correctly argues that the proper standard against which a trustee is measured is that of an ordinary person in the conduct of his own affairs. Tex.Prop.Code Ann. § 113.056 (Vernon 1995). Without the guidance of argument or authority from UNB to the contrary, it seems logical that a "reasonable trustee" would follow the statute and act as a reasonable person in the management of their own affairs. Moreover, UNB has not demonstrated how the error, if any, "was reasonably calculated to cause and probably did cause rendition of an improper judgment." Tex.R.App.P. 81(b)(1).

The trial court did not err by finding that UNB committed a breach of trust. Nor do we believe the trial court applied the wrong standard. Therefore, UNB's fourth point of error is overruled.

■ UNB's fifth point of error complains the trial court erred in awarding attorney's fees against it. UNB argues further that the Trustee failed to segregate attorney's fees and costs between Hoenig and UNB. Moreover, UNB seems to assert that because the trust instrument superseded the statutory standard of care, the Trust Code does not control the award of attorney's fees unless there is a finding of breach of trust. In response, Trustee argues that the Texas Trust Code applies and the trial court rightfully awarded "equitable and just" fees under section 114.064. Tex.Prop.Code Ann. § 114.064 (Vernon 1995).

■ We agree with Trustee. UNB's argument fails in several ways. First, we have

concluded that UNB did, in fact, commit a breach of trust. By UNB's own admission, this entitles Trustee to attorney's fees under the Code. Next, even if, as UNB theorizes, the Garcia trust instrument superseded the Trust Code as to the level of exculpation available to UNB, attorney's fees are still controlled by the Trust Code. Put simply, because the statutory standard of care is altered by the trust document, as supposed by UNB, it does not follow that UNB is not subject to the Code for other purposes. Last, the terms of the trust document do not override the Trust Code in this case. The trial court is empowered to award attorney's fees pursuant to section 114.064 and, therefore, it did not err by doing so.

■ Regarding segregation of attorney's fees, UNB argues that because Trustee did not isolate which fees and expenses were chargeable against which defendant, no attorney's fees should be awarded. Conversely, Trustee contends that fees and expenses were indeed segregated.

Trustee's attorney presented testimonial and demonstrative evidence reflecting charges against UNB, Hoenig, and against both. Trustee's attorney testified that he segregated the fees between the defendants to the best of his ability, and also presented testimony from an attorney, not otherwise involved in the case, to substantiate the reasonableness and necessity of the fees charged. In light of such evidence, the trial court is empowered to award "attorney's fees as may seem equitable and just." Tex.Prop. Code Ann. § 114.064 (Vernon 1995). The trial court did not err in awarding attorney's fees against UNB. UNB's fifth point of error is overruled.

■ In its sixth point of error, UNB complains that the parties may not be held jointly and severally liable. UNB reasons that because the action against Hoenig was for intentional acts, and not for negligence, the trial court is precluded from making UNB and Hoenig jointly and severally liable. Interestingly, Trustee insists that conversion, the action for which Hoenig was found liable, is not an intentional tort and, therefore, UNB's argument is inapplicable. Trustee also refutes UNB's position that joint and

several liability is only applicable to negligence.

Where the tortious conduct of two or more persons works together to create a single injury, which by its nature cannot be apportioned between the parties with any certainty, all of the tortfeasors will be jointly and severally liable. *Landers v. East Texas Salt Water Disposal Co.*, 151 Tex. 251, 248 S.W.2d 731, 734 (1952); *see* J. Edgar Hadley & James B. Sales, 1 Texas Torts and Remedies § 3.02[1], 3–5 to 3–6 (1995). UNB's sixth point of error is overruled.

■ By point of error seven, UNB asserts the trial court erred by failing to find Trustee comparatively "culpably negligent." UNB contends that despite various investigations, inspections, and appraisals of the trust property before and after taking over management of the Trust, Trustee also failed to discover the existence of the Salinas properties and, therefore, should be held comparatively culpably negligent. Without explicitly saying so, UNB is challenging the sufficiency of the evidence supporting the trial court's finding that Trustee was not negligent for failing to discover the Salinas street improvements because UNB failed to deliver a proper accounting of the trust property to Trustee.

■ A trial court's findings of fact are subject to legal and factual sufficiency challenges. *Mercer v. Bludworth*, 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), *overruled on other grounds, Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 894 (Tex.1991). But a no negligence finding will be upheld if the court's conclusion is supported by any probative evidence. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989).

It is clear from the language of Property Code section 114.002 and the indemnification clause in the December 31, 1991 court order naming Trustee as successor to UNB, that Trustee has no liability for acts or omissions occurring prior to the time Trustee assumed its duties nor did it have a duty to question the accounting of UNB as the prior fiduciary. Tex.Prop.Code Ann. § 114.002 (Vernon

1995). As to the time after Trustee actually assumed its role as successor trustee in April 1992, the evidence shows that Trustee accomplished in six months what UNB had not discovered in fourteen years—the Salinas street improvements.

Trustee received the trust files in April 1992. It made its first inspection of the property as trustee in June 1992, comparing the physical site against the documentation provided by UNB. Subsequently, Trustee appointed a manager to supervise the Iturbide property. The property manager then discovered the Salinas additions in late September or early October 1992. Trustee took immediate action to ascertain the status of the Salinas property, and by the end of October instituted legal proceedings to stop the improper payment of rents to Hoenig and to recover back rent. The foregoing is ample evidence to justify the trial court's conclusion that Trustee was not culpably negligent.

■ Point of error eight complains the trial court erred by entering judgment against UNB because doing so failed to give effect to the December 31, 1991 order of the 111th District Court in Laredo.

In its December 31, 1991 order permitting UNB to resign as trustee and appointing Texas Commerce as successor trustee, the district court issued an order relieving "Union National Bank of Texas ... of any further fiduciary responsibility under the Trust...." UNB contends that this language relieves UNB of liability after the date of the order.

We disagree. A reading of the plain language of the order shows that UNB was released from any further duties as trustee. However, there is no language releasing UNB from liability. UNB's eighth point of error is overruled.

### Ernest Hoenig's Points of Error

■ Hoenig's first point of error complains the trial court erred by finding Hoenig was not a holdover tenant after the expiration of the lease term on May 31, 1991. Hoenig argues that, although he never occupied any part of the premises himself, he possessed the property through his sub-tenants. Further, because he was never given explicit notice to vacate the premises he could not have been anything but a holdover tenant and was, therefore, entitled to continue collecting rent until notified to vacate.

UNB sent Hoenig notice by certified mail informing him that the lease "will expire by its own terms May 31, 1991." The notice further informed Hoenig that UNB "decided not to renew your lease" concluding "that direct property management by our Trust Department would serve the best interest of the Beneficiaries."

■ UNB's notice to Hoenig did not expressly use the word "vacate," but, despite Hoenig's argument to the contrary, no notice to vacate is necessary under these facts. The cases cited by Hoenig for the proposition that notice is required prior to termination, *Wendlandt v. Sommers Drug Co.*, 551 S.W.2d 488, 490 (Tex.Civ.App.—Austin 1977, no writ); *Shepherd v. Sorrells*, 182 S.W.2d 1009, 1012 (Tex.Civ.App.—Eastland 1944, no writ); *Wutke v. Yolton*, 71 S.W.2d 549, 551 (Tex.Civ.App.—Beaumont 1934, writ ref'd n.r.e.), are distinguishable from the case at hand. Those cases involve termination of leases for defaults, not expiration according to the lease terms. Moreover, even if notice to quit the property were necessary, the notice UNB sent to Hoenig would have been sufficient. UNB plainly stated that the lease relationship between Hoenig and the Garcia Trust would expire by its own terms on May 31, 1991, the date agreed to by the parties.

■ Most importantly, no notice to vacate was required because Hoenig was not in physical possession of the property, his former sub-lessees were. Collecting rent from sub-lessees does not constitute possession of the sublet property when the sub-lessor has no legal right to do so.

■ Even if Hoenig were deemed to have met all the other criteria as holdover, his argument still fails because, by his own admission, he did not pay rent for the seventeen months after the expiration of the lease on May 31, 1991. *See Pratt v. Dallas County*, 531 S.W.2d 904, 905 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.) (occupancy *and* monthly payment of rent in accordance with lease

terms after expiration of the lease gives rise to presumption that lessee exercises its option to holdover absent an explicit agreement to the contrary). Without both elements—possession and payment of rent—there can be no finding that Hoenig was a holdover tenant. Hoenig's first point of error is overruled.

Hoenig's second and third points of error complains the trial court erred by finding that Hoenig converted the rental income, arguing that rental income is not property sufficient to support conversion. Hoenig urges that if an indebtedness can be discharged by payment of money, an action for conversion is inappropriate. Also, Hoenig contends that absent a demand for return of the property, a conversion action will not stand.

However, in *Allied Bank of Texas v. Plaza DeVille Assoc.*, 733 S.W.2d 566, 572 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.), this Court affirmed a damage award for conversion of rental proceeds. As to the necessity of a demand as a predicate to recovery for conversion, when the possessor's acts manifest a clear repudiation of the plaintiff's rights, demand and refusal are not necessary. *Whitaker v. Bank of El Paso*, 850 S.W.2d 757, 760 (Tex.App.—El Paso 1993, no writ). Because Hoenig's collection of rents from the Salinas property was clearly contrary to the rights of the Trust, no demand was necessary for a conversion action to lie for his wrongful appropriation of those proceeds. Hoenig's second and third points of error are overruled.

Hoenig's fourth point of error asserts the trial court erred in awarding contribution from Hoenig to UNB after finding that UNB's culpable negligence and breach of trust were the proximate causes of damage to the Trust. Hoenig persists in his argument that he was a holdover tenant, and by virtue of that fact the most the Trust was entitled to was the amount of rent set by the lease agreement.

However, Hoenig does not explain why this is so, except to reiterate his contention that he is a holdover tenant. No where does Hoenig present authority defining the criteria necessary to be considered a holdover tenant, nor does he attempt to demonstrate how it applies to him. As previously stated, by definition, Hoenig was not a holdover because he did not possess the property nor did he pay rent, in any amount.

The issue of Hoenig's status as a holdover has been decided adversely to him; he was not entitled to continue collecting rent from the Salinas tenants. Thus, the trial court did not err by awarding contribution from Hoenig to UNB for the entire amount of the damages awarded. Hoenig's point of error number four is overruled.

Hoenig's fifth point of error assails the attorney's fees awarded against him to Texas Commerce Bank. Hoenig's claim is two-fold: (1) because he is a holdover he did nothing wrong, hence, Trustee is not entitled to attorney's fees, and (2) it is unfair to assess attorney's fees against him which were exacerbated by litigation of a dispute primarily between UNB and Texas Commerce.

Hoenig fails on both accounts. We have already concluded that Hoenig is not a holdover. The second argument also fails because Trustee segregated the litigation fees between UNB and Hoenig, and Hoenig was only assessed for the latter. Hoenig's fifth point of error is overruled.

The judgment of the trial court is affirmed.