STATE OF NORTH CAROLINA v. ALVIN LYNN DAVIS

No. 8212SC1188

(Filed 7 February 1984)

1. **Homicide § 28.8— defense of accident—insufficient evidence to require instruction**

   Defendant's testimony that he did not stab deceased but that deceased sustained four stab wounds as the result of the two of them bumping into cabinets as they struggled with a knife did not require the trial court to instruct the jury on the defense of homicide by accident where all of the evidence tended to show that defendant was not engaged in lawful conduct at the time of the killing in that the stab wounds proximately resulted from an altercation brought on by defendant and that defendant was the one who introduced the knife into the affray.

**2. Homicide § 30.3— second degree murder—failure to submit involuntary manslaughter**

   The evidence in a second degree murder case did not require the trial court to instruct on involuntary manslaughter since defendant's conduct in intentionally grabbing a knife and moving it toward the deceased during the course of a fight initiated and aggressively pursued by defendant constituted an act naturally dangerous to human life in that the fatal consequences were probable under all the facts existing at the time.

APPEAL by defendant from *Hobgood, Jr. (Robert), Judge.* Judgment entered 23 June 1982 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 31 August 1983.

   *Attorney General Edmisten, by Assistant Attorney General George W. Boylan, for the State.*

   *James R. Parish, for defendant appellant.*

JOHNSON, Judge.

   Defendant was indicted and tried upon the charge of second degree murder. The state presented evidence which tended to show that on 4 March 1982 defendant was living with his girlfriend, Martha Wingate, in Apartment 3-C, Hyde Place Apartments, Fayetteville, North Carolina. Martha Wingate testified that on 4 March 1982, defendant left for work at about 6:00 a.m. Between 7:45 and 8:00 a.m. Robert Lowery arrived at the apartment to do some work on Martha's motor vehicle. Martha and Lowery had been "seeing" each other for about two months. She admitted Lowery into the apartment and told him to be seated while she finished dressing. Defendant returned home at about 8:45 a.m. and discovered Lowery in the apartment. Defendant and Lowery began to argue. Martha told defendant that she had asked Lowery over to work on her car. Defendant reminded Lowery that he had previously told him not to return to the apartment. After ordering Lowery to leave, defendant struck him, at which time the two of them began to struggle. As they struggled, defendant grabbed a knife with a seven or eight inch blade from a counter. Defendant stabbed Lowery four times. A stab wound in the lower left abdomen resulted in Lowery's death.

   Defendant presented evidence which tended to show that defendant has a good character and reputation. Defendant testi-

fied that he returned to the apartment at about 8:45 a.m. When he discovered Lowery in the apartment, he ordered him to leave, but became angry when Lowery "just stood there and didn't want to leave." Defendant then punched and jumped on Lowery. According to defendant, the two of them then began to fight with each other. As they struggled with each other, defendant picked up the knife, and as he came around with it, Lowery grabbed the hand which defendant held the knife in. Lowery tried to force the knife into defendant, who was trying to force the knife away. They bumped against cabinets as they struggled with the knife. Defendant testified further that he did not try to cut Lowery, he was only trying to protect himself and he does not know how Lowery was stabbed.

The court denied defendant's request for an instruction on the defense of homicide by accident and on involuntary manslaughter as permissible verdicts. Defendant was convicted of voluntary manslaughter and from judgment imposing a five year active sentence, defendant appeals.

[1] By his first assignment of error, defendant contends the trial court erred in denial of his request for an instruction on the defense of homicide by accident. Defendant argues that from his testimony a permissible inference may be drawn that deceased came to his death by accident.

The court is required to charge the jury as to the law upon all substantial features of the case arising upon the evidence, including all defenses presented by defendant's evidence. *State v. Faust,* 254 N.C. 101, 118 S.E. 2d 769 (1961). If the killing was in fact accidental, defendant would not be guilty of any crime, even though his acts were responsible for the victim's death. *State v. Faust, supra.* A killing is accidental if it is unintentional, occurs during the course of lawful conduct, and does not involve culpable negligence. *State v. Faust, supra.* Culpable negligence as defined in the criminal law is more than actionable negligence in the law of torts, and is such recklessness or carelessness proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety or rights of others. *State v. Early,* 232 N.C. 717, 62 S.E. 2d 84 (1950).

A defense that the death of Lowery was the result of an accident must be predicated upon the absence of an unlawful act on the part of the defendant and the absence of culpable negligence. *State v. Faust, supra.* An examination of defendant's testimony reveals that defendant was not entitled to an instruction on the defense of homicide by accident. At the time of the killing, defendant was not engaged in lawful conduct. It appears from defendant's testimony that defendant willingly and aggressively initiated the fight. Defendant, upon discovering Lowery at his apartment, became angry and punched Lowery, at which time the two began to fight. As they struggled, defendant grabbed a knife and "came around with it" toward Lowery. Assuming *arguendo* that, as defendant testified, he did not stab Lowery, but that Lowery apparently sustained the four stab wounds as a result of the two of them bumping into cabinets as they struggled with the knife, the conclusion is inescapable that the stab wounds nonetheless proximately resulted from the altercation brought on by the defendant, who was also the one who introduced the knife into the affray. Therefore, the trial court was correct in its denial of defendant's request for an instruction on defense of homicide by accident.

[2] Defendant next contends the trial court erred in failing to submit involuntary manslaughter as a possible verdict. Defendant was tried on a charge of second degree murder. The trial judge submitted three possible verdicts: guilty of second degree murder, guilty of voluntary manslaughter or not guilty.

Involuntary manslaughter is the unlawful killing of a human being, unintentionally and without malice, proximately resulting from the performance of an unlawful act not amounting to a felony, or resulting from some act done in an unlawful or culpably negligent manner, when fatal consequences were not improbable under all the facts existing at the time, or resulting from a culpably negligent omission to perform a legal duty. *State v. Redfern,* 291 N.C. 319, 230 S.E. 2d 152 (1976); *State v. Poole,* 44 N.C. App. 242, 261 S.E. 2d 10 (1979), *disc. rev. denied,* 299 N.C. 739, 267 S.E. 2d 667 (1980). The trial judge must submit and instruct the jury on any lesser included offense of the crime when there is evidence from which the jury can find that a defendant committed the lesser included offense. *State v. Redfern, supra.*

It is clear, from defendant's own testimony, that defendant was not entitled to have involuntary manslaughter submitted as a possible verdict. Defendant's conduct in *intentionally* grabbing the knife and moving it toward the deceased during the course of a fight initiated and aggressively pursued by defendant, constituted an act naturally dangerous to human life in that the fatal consequences were probable under all the facts existing at the time. There was no evidence to support a verdict of involuntary manslaughter and the trial court was correct in not submitting it as a possible verdict.

In the trial of defendant's case we find

No error.

Judges BECTON and BRASWELL concur.