**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

　　　　　v.

JAVIER GOMEZ-LEON,
　　　　　　*Defendant-Appellant.*

No. 05-50138

D.C. No.
CR-04-02230-WQH

OPINION

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted
March 4, 2008—Pasadena, California

Filed September 24, 2008

Before: John R. Gibson,* Diarmuid F. O'Scannlain, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Gibson;
Partial Concurrence and Partial Dissent by
Judge O'Scannlain

---

*The Honorable John R. Gibson, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

13487

**COUNSEL**

Lynn H. Ball, Law Office of Lynn H. Ball, San Diego, California, for the defendant-appellant.

Timothy F. Salel, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

_____

**OPINION**

GIBSON, Circuit Judge:

Javier Gomez-Leon was found guilty by the district court of attempted entry into the United States after deportation, 18 U.S.C. § 1326, following a non-jury trial. The district court sentenced Gomez to 84 months' imprisonment based on an advisory Guidelines range of 84-105 months. The district court arrived at that advisory range by beginning with a base offense level of eight, applying a sixteen-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A) (prescribing an increase in sentencing range if the defendant was previously convicted a "crime of violence" or a "drug trafficking offense for which the sentence imposed exceeded 13 months"), and granting a two-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1. Gomez's total offense level was, therefore, twenty-two. On appeal, Gomez argues that the district court erred by applying the sixteen-level enhancement under § 2L1.2(b)(1)(A)(i) & (ii). We reverse and remand for re-sentencing.

Gomez is a Mexican national with a long history of deportation and unlawful behavior. He entered the country illegally as early as 1994. In 1998, he came to the attention of immigration authorities when he was convicted for driving a vehicle under the influence of alcohol and without a license. That same year, he was removed to Mexico following a removal hearing before an immigration judge. Gomez then reentered the country illegally. In 1999, he was convicted of violating California Health & Safety Code section 11379(a), an offense involving controlled substances. He was removed to Mexico once again in 1999. Gomez again illegally reentered the country. He was convicted in 2000 of receiving stolen goods and

of driving under the influence. He was removed to Mexico a third time in 2000. On November 4, 2003, he was convicted in California state court of vehicular manslaughter while intoxicated without gross negligence, Cal. Penal Code § 192(c)(3) (1998),[1] for which he was sentenced to two years' imprisonment. Following his release, Gomez was once again removed to Mexico in 2004. Six days later, Gomez was arrested at the Mexico-United States border and charged with the instant offense of attempted reentry. Following a non-jury trial, Gomez was found guilty and sentenced to 84 months' imprisonment with three years of supervised release.

Gomez's various appellate arguments stem from a sixteen-level enhancement that the district court applied to his advisory sentencing range under U.S.S.G. § 2L1.2(b)(1)(A), which requires such an enhancement

> [i]f the defendant previously was deported, or unlawfully remained in the United States, after—
>
> (A)   a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense . . . .

For the enhancement to apply, the government must show that the defendant was lawfully removed from the United States

---

[1]The California Code was revised on January 1, 2007, after Gomez was convicted. The current California Penal Code section 192(c)(3) is materially different than the version which applied in 2003. We cite to the version of the code that was in effect in 2003, when Gomez was convicted. The current version of California Penal Code section 191.5(b) (2007) is, in all respects material to this case, substantially the same as the version of section 192(c)(3) in effect in 2003. *See* Cal. Penal Code § 192(c)(3) (1998).

after being convicted of a predicate offense. *Id.* The district court found that *both* Gomez's drug conviction under California Health & Safety Code section 11379(a) and his conviction for vehicular manslaughter while intoxicated, without gross negligence, Cal. Penal Code § 192(c)(3), were predicate offenses, justifying the enhancement.

Gomez challenges each component of these findings. He urges us to reverse his sentence because the district court erred by finding that (1) his conviction under California Health & Safety Code section 11379 was a "drug trafficking offense for which the sentence imposed exceeded 13 months"; (2) his California conviction for vehicular manslaughter without gross negligence, Cal. Penal Code § 192(c)(3), was a felony "crime of violence"; and (3) he was lawfully deported or unlawfully remained in the country following either of those convictions.[2]

"We review de novo the district court's interpretation of the United States Sentencing Guidelines . . . , review for clear error the district court's factual determinations, and review for abuse of discretion the district court's applications of the Guidelines to the facts." *United States v. Holt*, 510 F.3d 1007, 1010 (9th Cir. 2007). We must reverse if the district court committed a significant procedural error, such as incorrectly calculating the advisory Guidelines' sentencing range. *Gall v. United States*, 128 S. Ct. 586, 597 (2007); *United States v. Carty*, 520 F.3d 984, 991-93 (9th Cir.) (en banc), *cert. denied*, 128 S. Ct. 2491 (2008).

---

[2]Gomez also argues that his sentence violates the Sixth Amendment because it requires the district court to find, based upon a preponderance of the evidence, that he committed a prior felony. The Supreme Court has made clear that the fact of a prior conviction need not be proved to a jury beyond a reasonable doubt. *United States v. Booker*, 543 U.S. 220, 244 (2005). Consequently, Gomez's argument is foreclosed.

I.

Gomez argues that even if we hold that one of his convictions was a predicate offense under U.S.S.G. § 2L1.2(b), he was never "lawfully deported" after either of those convictions because his 1999, 2000, and 2004 removals—those that occurred after one of the predicate convictions—were authorized by an immigration officer, not an immigration judge. During the pendency of Gomez's appeal, this argument has been foreclosed. In *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 498 (9th Cir. 2007) (en banc), we held that removal by an immigration officer pursuant to a prior removal order is lawful. Gomez's initial removal occurred in 1998, following a hearing before an immigration judge. He returned to the United States, committed the crimes of conviction, and was then removed three additional times, the latest removal occurring in July 2004, following his most recent California conviction for vehicular manslaughter while intoxicated without gross negligence. This removal was performed by an immigration officer, but pursuant to the prior removal order. Consequently, the district court committed no legal error in relying upon the 2004 removal for purposes of the § 2L1.2(b) enhancement.

II.

Gomez argues that his conviction under California Health & Safety Code section 11379(a) is not a predicate offense because it was not for a "drug trafficking offense" and the sentence imposed for the conviction did not exceed thirteen months.

A.

[1] In order to determine if Gomez's California conviction was for a "drug trafficking offense," we must apply the *Taylor* categorical approach, *Taylor v. United States*, 495 U.S. 575 (1990), wherein we compare the statutory definition of

the underlying offense to the Guidelines definition of a "drug trafficking offense." *Id.* at 599; *United States v. Navidad-Marcos*, 367 F.3d 903, 907-08 (9th Cir. 2004). The commentary to § 2L1.2 of the Guidelines defines a "drug trafficking offense" as "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 2L1.2 cmt. 1(B)(iv). We have held that the California offense under section 11379(a)**³** is broader than the Guidelines' definition of a "drug trafficking offense" because the California offense criminalizes simple transportation of a drug without intent to distribute it. *Navidad-Marcos*, 367 F.3d at 907-08; *United States v. Almazan-Becerra*, 482 F.3d 1085, 1088 (9th Cir. 2007). Consequently, we cannot say that all convictions under section 11379(a) qualify for the enhancement.

[2] Under the *Taylor* modified categorical approach, when we encounter a statute that is categorically overbroad as compared to the Guidelines definition, we may make a limited inquiry into the facts of the underlying conviction to determine whether the "conviction was based on all of the elements of a qualifying predicate offense." *Navidad-Marcos*, 367 F.3d at 908. Our inquiry under the modified categorical approach is limited to the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented to determine if a prior conviction qualifies for an enhancement." *Almazan-Becerra*, 482 F.3d at 1088 (internal quotation marks omitted). While we may not rely solely upon the charg-

---

**³**California Health & Safety Code section 11379(a) provides that "every person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport" certain controlled substances "shall be punished by imprisonment in the state prison for a period of two, three, or four years."

ing papers, *id.*, we may rely upon them in conjunction with a defendant's written plea agreement or a transcript of the plea to show that the defendant pled guilty to facts covered by the Guidelines offense, *United States v. Corona-Sanchez*, 291 F.3d 1201, 1211 (9th Cir. 2002) (en banc).

**[3]** In this case, the district court relied upon the criminal complaint and the defendant's written plea of guilty. According to the written plea agreement, Gomez pled guilty to Count Two of the written complaint, which alleged that he "did unlawfully sell, furnish, administer, give away, or offer to sell, furnish, administer, and give away . . . controlled substances." In other words, Gomez distributed a controlled substance or attempted to distribute one by offering to do so. Both distribution and attempted distribution of a controlled substance are "drug trafficking offenses." *See* U.S.S.G. § 2L1.2(b)(1)(A) cmts. 1(B)(iv) & 5. Consequently, the district court did not err in finding that Gomez's conviction under California Health & Safety Code section 11379(a) was a "drug trafficking offense."

## B.

**[4]** The more difficult question presented by using the section 11379(a) conviction to support the enhancement is whether a sentence of greater than thirteen months was imposed. We conclude that it was not. For purposes of U.S.S.G. § 2L1.2(b), a "sentence imposed" does not include any part of a sentence that has been suspended. *United States v. Moreno-Cisneros*, 319 F.3d 456, 458 (9th Cir. 2003) (interpreting U.S.S.G. § 2L1.2 cmt. 1(A)(iv) (2001), having materially the same text as current § 4A1.2(b)(2), which is incorporated by reference into current § 2L1.2, *see* § 2L1.2 cmt. 1(B)(vii)). It does include both a sentence originally imposed, but not suspended, and any additional sentence of incarceration ordered as a result of a probation violation. *Id.* It also includes a term of incarceration imposed as a condition of probation. *United States v. Hernandez-Valdovinos*, 352

F.3d 1243, 1248-49 (9th Cir. 2003) (also interpreting prior version of the Guidelines). Moreover, we ignore any good behavior credits or other non-judicial adjustments earned by the defendant. *United States v. Benitez-Perez*, 367 F.3d 1200, 1204 (9th Cir. 2004).

**[5]** According to court documents, Gomez's sentence was suspended and he was given three years of probation, which included as a term of probation a 127-day sentence in the custody of the county sheriff. At the time the conditions of probation were imposed, Gomez had already earned 127 days of credit for time served and good behavior awaiting trial. He was therefore released on May 4, 1999. Sometime thereafter, Gomez violated a condition of his probation. On March 30, 2000, he appeared in the California trial court; the trial court revoked Gomez's probation and then reinstated it with an added condition, a 365-day term in the custody of the county sheriff.

Gomez argues that the district court erred by adding the 365-day jail term to the 127-day jail term because the longer sentence included the shorter one. The state trial court records provided on appeal are unclear on this point, but they do not contradict Gomez's contention. *See* Cal. Penal Code § 19.2 (providing that a California trial court cannot impose jail time greater than 365 days in the custody of the county sheriff as a term of probation); *but see People v. Johnson*, 147 Cal. Rptr. 55, 58 (Ct. App. 1978) (providing that a California trial court can impose up to 365 days of jail time after a probation violation, if the defendant consents, even if the jail time imposed as an original condition of probation was 365 days). The record contains no evidence that Gomez consented to receiving a total period of jail time in excess of 365 days. Without such consent, the 365 days would have had to include the prior 127 days.

**[6]** Under the modified categorical approach, the government bears the burden to demonstrate that the prior conviction

was a qualifying offense—here, that the sentence exceeded thirteen months. *See United States v. Kelly*, 422 F.3d 889, 895 (9th Cir. 2005) ("Under the modified categorical approach, the government has the burden to establish clearly and unequivocally the conviction was based on all of the elements of a qualifying predicate offense." (internal quotation marks omitted)). Because the record does not demonstrate that Gomez's sentence exceeded thirteen months, the district court clearly erred in applying the enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(I) on the basis of Gomez's drug trafficking offense.

### III.

### A.

**[7]** Alternatively, the district court found that Gomez's California conviction for vehicular manslaughter while intoxicated without gross negligence, Cal. Penal Code § 192(c)(3) (1998), was also a predicate offense under U.S.S.G. § 2L1.2(b)(1)(A)(ii) because the conviction was a "crime of violence." The statute under which Gomez was convicted (prior to its revision, *see supra* note 1) punished voluntary, involuntary, and vehicular manslaughter, according to the California legislature's wording. Cal. Penal Code § 192. The district court found that Gomez was convicted under subsection (c)(3), which defined the crime as

> Driving a vehicle in violation of Section 23140, 23152, or 23153, [i.e., driving while intoxicated,] of the Vehicle Code and in the commission of an unlawful act, not amounting to felony, but without gross negligence; or driving a vehicle in violation of Section 23140, 23152, or 23153 of the Vehicle Code and in the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence.

*Id.* The current version of the statute, Cal. Penal Code § 191.5(b), refers to this crime as vehicular manslaughter while intoxicated, without gross negligence. Conviction under former section 192(c)(3) or current section 191.5 requires proof of four elements: 1) driving a vehicle while under the influence of drugs or alcohol in violation of the California vehicle code,[4] 2) while also committing another misdemeanor or infraction or an otherwise lawful act that might cause death,[5] 3) in a negligent manner, 4) where the negligent conduct causes the death of another person. *See* Judicial Council of California Criminal Jury Instructions, No. 591 (2007) (interpreting revised version of offense found in Cal. Penal Code § 191.5 (2007)); 6-142 *California Criminal Defense Practice* § 142.02 (2007). The negligence requirement is met if the defendant commits ordinary (tort) negligence. *See People v. Bussel*, 118 Cal. Rptr. 2d 159, 163 (App. Dep't Super. Ct.

---

[4]Specifically, the defendant must violate section 23140 (unlawful for person under 21 to drive a vehicle while having 0.05 percent or more, by weight, of alcohol in his or her blood), 23152 (unlawful for a person to drive a vehicle while under the influence of alcohol or drugs, having an unlawful blood alcohol content, or addicted to alcohol or drugs), or 23153 (unlawful for a person to drive a vehicle while under the influence of alcohol or drugs or having an unlawful blood alcohol content, concurrent with neglecting a lawful duty or doing an act forbidden by law where such conduct causes bodily injury to another person) of the California Vehicle Code.

[5]The requirement of a lawful, but negligent, act that might cause death could be interpreted as requiring a higher degree of culpability than ordinary negligence and approaching the standard for criminal negligence. Despite this peculiar language, the California courts insist that this statute requires proof of only ordinary negligence. *See Davis v. Dennis B. (In re Dennis B.)*, 557 P.2d 514, 521 (Cal. 1976); *People v. Bussel*, 118 Cal. Rptr. 2d 159, 163 (App. Dep't Super. Ct. 2002). Moreover, if California Penal Code section 191.5(a) (2007) (vehicular manslaughter while intoxicated *with gross negligence*) had been read to require criminal negligence, it would have been redundant of section 191.5(b) (vehicular manslaughter while intoxicated *without gross negligence*, Cal. Penal Code 191.5(b)). *See* Judicial Council of California Criminal Jury Instructions, No. 591 (2007) (defining gross negligence to require acts that create high risk of death or serious bodily injury).

2002) (phrase "without gross negligence" means that only ordinary negligence is required); Cal. Criminal Jury Inst., No. 591.

Gomez argues that because Cal. Penal Code section 192(c)(3) requires proof of only ordinary negligence, it cannot be a "crime of violence" for purposes of the sixteen-level enhancement. This question requires us to delve once again into the murky waters of what is meant by a "crime of violence."

## B.

Confusingly, the phrase "crime of violence" is used to identify predicate offenses in a wide variety of contexts,[6] but there are at least four different ways to determine whether an offense constitutes a "crime of violence."[7] *See* 18 U.S.C. § 16; U.S.S.G. § 2L1.2 cmt. 1(B)(iii); U.S.S.G. § 4B1.2. What may be a predicate offense under one approach is not necessarily

---

[6]*See* 18 U.S.C. § 924(c)(3) (establishing statutory minimums for firearm offenses involving crimes of violence); 8 U.S.C. § 1227(a)(2)(E)(i) (authorizing deportation of alien who commits domestic crime of violence); 8 U.S.C. § 1101(a)(43)(F) (crimes of violence constitute "aggravated felonies" for immigration purposes); 18 U.S.C. § 3181 (authorizing extradition of persons who have commited crimes of violence); 21 U.S.C. § 841(b)(7) (establishing mandatory maximum sentence for persons who commit a crime of violence by drugging someone unawares); U.S.S.G. § 2L1.2(b)(1)(A)(ii) (enhancing advisory sentencing base offense level by sixteen for aliens who were deported after committing a crime of violence and subsequently entered United States unlawfully); U.S.S.G. § 4A1.1(f) & cmt. 6 (increasing criminal history for crimes of violence not otherwise counted by the Guidelines); U.S.S.G. § 4B1.2(a) (classifying the defendant as a career offender based upon having committed crimes of violence); *see also Leocal v. Ashcroft*, 543 U.S. 1, 6-7 & n.4 (2004) (collecting uses of phrase as defined in the Comprehensive Crime Control Act of 1984).

[7]For example, compare the statutory definitions under 18 U.S.C. §§ 16 & 924(c)(3) with U.S.S.G. § 4B1.2. Even within the Sentencing Guidelines, there are different meanings of the phrase. *Compare* U.S.S.G. § 4B1.2 *with* § 2L1.2 cmt. 1(B)(iii).

a predicate offense under another approach. Generally, the statute or guideline provision being applied specifies which approach should be used in the context of that statute or guideline provision. When the phrase is used in a statutory context, the statutory definition adopted as part of the Comprehensive Crime Control Act of 1984 generally applies. 18 U.S.C. § 16.

**[8]** Section 16 uses a double-barreled approach, defining the phrase in two ways, disjunctively. Thus, a "crime of violence" is

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16. We will refer to the § 16(a) approach as the *element test* because it focuses on whether use of force is an element of the offense. Section 16(b) focuses on the *risk* that the offense will involve the use of force. *See also Leocal v. Ashcroft*, 543 U.S. 1, 10 (2004) (explaining that §16(b) "sweeps more broadly than" the element test because it encompasses offenses where a person merely disregards a *risk* that physical force will be used in commission of the offense). Therefore, we will refer to § 16(b) as the *substantial risk/use of force test*. Both tests require that force be "used" "against the person or property of another." § 16. In *Leocal*, the Supreme Court reasoned that the words "used" "against the person or property of another" mean the infliction of force must be volitional in order to qualify as a predicate offense, requiring proof of "a higher degree of intent than negligent or merely accidental conduct." 543 U.S. at 9-11 (holding that alien's DUI conviction was not a "crime of violence" under

§ 16 because commission of the crime did not require volitional use of force or risk of volitional use of force). We interpreted *Leocal* in *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006) (en banc), to further exclude from § 16(a) offenses that may be "committed through the reckless, or grossly negligent, use of force." *See Fernandez-Ruiz*, 466 F.3d at 1132 (holding that Arizona assault statute that may be committed by recklessly causing injury to a person was not a "crime of violence"). As a result, only those offenses that involve "the intentional use of force against the person or property of another" become predicate offenses under the element test. *Id.* We later held that the same requirement applies to "crimes of violence" captured by the substantial risk/use of force test. *Malta-Espinoza v. Gonzales*, 478 F.3d 1080, 1084 (9th Cir. 2007). The effect of our holdings is that in order to be a predicate offense under either 18 U.S.C. § 16 approach, the underlying offense must require proof of an *intentional* use of force or a substantial risk that force will be *intentionally* used during its commission.

[9] The applicable context in this case, section 2L1.2(b)(1) (A)(ii) of the United States Sentencing Guidelines, contains its own approach to defining a crime of violence that is only partly similar to the 18 U.S.C. § 16 definition. Under U.S.S.G. § 2L1.2(b)(1), a crime of violence

> means any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or

> any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

§ 2L1.2 cmt. 1(B)(iii) (paragraph spacing added for convenience). The second phrase of the § 2L1.2(b) definition is

materially the same as the element test from 18 U.S.C. § 16(a)[8] and is subject to the same construction, which means that it covers only convictions for an offense that requires proof of the intentional use of force. *See United States v. Narvaez-Gomez*, 489 F.3d 970, 976-77 (9th Cir. 2007) (applying *Fernandez-Ruiz* to the element test in § 2L1.2). The first phrase of the definition describes our third approach by listing several enumerated offenses that constitute "crimes of violence" per se. We refer to this approach as the *enumerated offenses approach*.

[10] Notably absent from the § 2L1.2(b) definition is the substantial risk/use of force test. Its absence is explainable by considering the history of the § 2L1.2 Guidelines provision. Prior to the 2001 amendments to the Guidelines, § 2L1.2(b) defined a "crime of violence" by reference to the definition contained in § 4B1.2, the career offender provision of the Guidelines. *See* U.S.S.G. App. C Vol. II, amend. 632 (2003). The career offender definition for a "crime of violence" contains the element test and our fourth approach, which we will call the *serious risk of injury test*. § 4B1.2. Under the *serious risk of injury test*, an offense is a "crime of violence" if it

> is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a)(2) (2000). This approach appears to have originated in the Armed Career Criminal Act's definition of the term "violent felony." 18 U.S.C. § 924(e)(2)(B)(ii). In applying the serious risk of injury test in the context of § 924(e)(2)(B)(ii), the Supreme Court recently held that the

---

[8]However, it limits predicate offenses to those that contain as an element the use of force against another "person" and does not apply to offenses which require use of force against only "property." *Compare* 18 U.S.C. § 16(a) *with* U.S.S.G. § 2L1.2 cmt. 1(B)(iii).

listed offenses, which precede the remainder clause, "illustrate the kinds of crimes that fall within the statute's scope" and that the remainder clause therefore includes only those offenses which are similar to the illustrated crimes. Such a similarity exists where the underlying offense requires "purposeful, violent, and aggressive conduct." *See Begay v. United States*, 128 S. Ct. 1581, 1587 (2008) (holding that felony DUI is not a violent felony under the serious risk of injury test because it was not purposeful, violent, and aggressive).

The serious risk of injury test resembles the substantial risk/use of force test because it is based on the degree of risk that the commission of the underlying offense will cause a particular result. We previously followed other circuits in holding that the serious risk of injury test was more expansive than the substantial risk/use of force test because it did not require proof of mens rea. *United States v. Rendon-Duarte*, 490 F.3d 1142, 1148 (9th Cir. 2007); *see Leocal*, 543 U.S. at 10 n.7; *see also United States v. McCall*, 439 F.3d 967, 971 (8th Cir. 2006) (en banc) (holding that felony DUI satisfies the serious risk of injury test), *recognized as overruled*, *United States v. Comstock*, 531 F.3d 667, 679 (8th Cir. 2008); *United States v. Begay*, 470 F.3d 964, 971 (10th Cir. 2006) (following *McCall*), *rev'd*, 128 S. Ct. 1581 (2008). Since then, however, the Supreme Court decided *Begay*, in which it held that the serious risk of injury test includes only offenses that involve "purposeful, violent, and aggressive" conduct. Following *Begay*, it is unclear whether there is any meaningful difference between the two risk-based approaches, but we need not decide that issue here.

In 2001 the commentary to U.S.S.G. § 2L1.2 was amended to create the current definition of a "crime of violence," effectively severing the § 2L1.2 definition from the § 4B1.2 definition and removing altogether the serious risk of injury test from § 2L1.2. *See* U.S.S.G. App. C Vol. II, amend. 632 (2001). This amendment was enacted in order to provide a

more graduated sentencing structure under § 2L1.2. *Id.*; Roger W. Haines, Frank O. Bowman III & Jennifer C. Woll, *Federal Sentencing Guidelines Handbook* § 2L1.2, at 830-31 (2007 ed.). Thus, in order for a defendant to receive a sixteen-level enhancement for a "crime of violence," the crime either had to be an enumerated offense or had to satisfy the element test, the latter of which includes only crimes which have as an element the intentional use of force. Neither risk-based test is a basis for a sixteen-level enhancement. Rather, offenses satisfying the substantial risk/use of force test warrant only an eight-level enhancement under the aggravated felony provision of § 2L1.2(b)(1)(C).[9] Offenses that satisfy only the serious risk of injury test then fall into the remainder "any other felony" provision of U.S.S.G. § 2L1.2(1)(D), which warrants only a four-level enhancement.

Although the Guideline drafters omitted both risk-based tests from the sixteen-level enhancement, they did not remove all risk-based offenses. Instead, they specially listed a number of offenses as "crimes of violence" and, thus, deserving of the sixteen-level enhancement, even though some of those crimes do not contain as an element of their offense the intentional use of force. *See United States v. Pereira-Salmeron*, 337 F.3d 1148, 1152 (9th Cir. 2003) (noting that "extortionate extension of credit and burglary" do not entail use of force but do involve risk that force may be used during their commission). Thus, when we consider whether a crime of conviction falls within the list of enumerated offenses, we do so without regard for whether those offenses involve the "use, attempted use, or threatened use of physical force against the person of another." *See id.* Consequently, *all* convictions for offenses which constitute "murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual

---

[9]This is true because the substantial risk/use of force test is part of the definition of an "aggravated felony." *See* § 2L1.2 cmt. 3(A) (incorporating by reference definition of an "aggravated felony" found in 8 U.S.C. § 1101(A)(43), which in turn incorporates 18 U.S.C. § 16).

abuse of a minor, robbery, arson, extortion, extortionate extension of credit, [or] burglary of a dwelling" are treated as "crimes of violence" for purposes of the sixteen-level enhancement. U.S.S.G. § 2L1.2 cmt. 1(B)(iii). Moreover, since the enumerated offenses approach does not require us to apply either the element test or the substantial risk/use of force test, the underlying conviction need not be for an offense that involves the intentional use of force; *Leocal* does not apply.

## C.

**[11]** We have identified the four approaches for defining a "crime of violence" as the element test, the substantial risk/ use of force test, the serious risk of injury test, and the enumerated offenses approach. Having identified and defined each approach, we must apply the appropriate approaches to this case. Only two of the four approaches are directly relevant in the context of U.S.S.G. § 2L1.2(b), which defines a "crime of violence" using the element test and an enumerated offenses approach. The government concedes that the element test cannot justify the enhancement here because California Penal Code section 192(c)(3) (1998) does not involve an "intentional use of force."[10] We reached the same conclusion when we analyzed a current version of the greater California offense of vehicular manslaughter while intoxicated *with* gross negligence. *See Lara-Cazares v. Gonzales*, 408 F.3d 1217, 1221 (9th Cir. 2005) (holding that offense met neither element test nor substantial risk/use of force test in context of review of decision of the Board of Immigration Appeals find-

---

[10]The government concedes that a conviction for vehicular manslaughter while intoxicated without gross negligence under California Penal Code section 192(c)(3) does not constitute a "crime of violence" within the meaning of U.S.S.G. § 2L1.2(b)(1)(A)(ii). But "[w]e are not bound by a party's concession as to the meaning of the law, even if that party is the government and even in the context of a criminal case." *United States v. Ogles*, 440 F.3d 1095, 1099 (9th Cir. 2006) (en banc).

ing petitioner removable for having committed a "crime of violence").

**[12]** During the sentencing hearing, the district court gave two reasons for applying the enhancement. First, it recited a passage from our opinion in *United States v. O'Neal*, 937 F.2d 1369, 1371-72 (9th Cir. 1990), where we held that a conviction in California under an even older version of the vehicular manslaughter while intoxicated without gross negligence statute, Cal. Penal Code § 192.3 (1970), was a "violent felony" under the serious risk of injury test in the context of mandatory minimum sentencing under the Armed Career Criminal Act, 18 U.S.C. § 924(e). This was error because the serious risk of injury test does not apply in the context of U.S.S.G. § 2L1.2(b). In addition to citing *O'Neal*, the district court applied the enumerated offenses approach that is authorized by U.S.S.G. § 2L1.2 cmt. 1(B)(iii), finding that Gomez's conviction for vehicular manslaughter while intoxicated without gross negligence was one of "manslaughter" and that it, therefore, fell within the enumerated offenses.

**[13]** The district court relied largely upon the fact that the California offense is called "vehicular manslaughter" to find that it was "manslaughter." But the Supreme Court has directed us to look beyond the label applied to an offense by the state legislature and consider whether the substance of the offense matches the "generally accepted contemporary meaning of [the] term." *Taylor v. United States*, 495 U.S. 575, 596 (1990); *see also United States v. Gomez-Mendez*, 486 F.3d 599, 602 (9th Cir.) (asking whether state crime fell within "ordinary, contemporary, and common meaning" of "statutory rape," enumerated as a "crime of violence" under § 2L1.2(b)(1)(ii) (internal quotation marks omitted)), *cert. denied*, 128 S. Ct. 545 (2007). Thus, an enumerated offense must have some "uniform definition independent of the labels employed by the various States' criminal codes." *Taylor*, 495 U.S. at 592. When the enumerated offense is a traditional crime, such as manslaughter, we derive its uniform meaning

from the generic, contemporary meaning employed by most states, guided by scholarly commentary. *United States v. Bolanos-Hernandez*, 492 F.3d 1140, 1143 (9th Cir.), *cert. denied*, 128 S. Ct. 731 (2007).

1.

*Contemporary Meaning of Manslaughter*

Historically, the common law did not distinguish between murder and manslaughter. 2 Wayne R. LaFave, *Substantive Criminal Law* § 15.4 (2d ed. 2007). Eventually, however, two distinct crimes emerged. Manslaughter was commonly called the "unlawful killing of a human being without malice aforethought." *Id.* § 15.1. "[M]anslaughter itself was subdivided into two branches—voluntary manslaughter (intended homicide in a heat of passion upon adequate provocation) and involuntary manslaughter (unintended homicide under certain circumstance)." *Id.* § 15.4. According to LaFave, it is the general trend for involuntary manslaughter to require the mens rea element of recklessness. Even though some states have held that involuntary manslaughter can be established by proof of ordinary negligence, "the great weight of authority requires something more."[11] *Id.* § 15.4(a).

In *United States v. Dominguez-Ochoa*, 386 F.3d 639, 644-46 (5th Cir. 2004), the Fifth Circuit agreed with LaFave and held that the modern view of manslaughter required proof of recklessness. That case presented the reverse of the question

---

[11]Unlike ordinary negligence, recklessness requires conduct that involves both (1) "a high degree of risk of death or serious bodily injury, in addition to the unreasonable risk required for ordinary negligence" or a gross deviation from the ordinary standard of care and (2) that the defendant be "aware of the fact that his conduct creates this risk." 2 Wayne R. LaFave, *Substantive Criminal Law* § 15.4(a) (2d ed. 2007). Gross negligence or criminal negligence requires something more than ordinary negligence, such as one, and in some cases both, of the additional elements. *Id.* § 5.4.

presented here. The Texas offense being reviewed there was called negligent homicide, but the government argued it was equivalent to manslaughter and was thus a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii). *Id.* The mens rea element to that statute was criminal negligence, a degree of culpability higher than ordinary negligence, but lower than recklessness. The Fifth Circuit reversed the district court's application of the sixteen-level sentencing enhancement, holding that a prior conviction for negligent homicide that required only criminal negligence was not manslaughter. *Id.*

This view is consistent with the Model Penal Code, which also requires recklessness for the crime of manslaughter and criminal negligence for the crime of negligent homicide. §§ 210.3 & 210.4. Criminal negligence is a higher standard than ordinary negligence; it requires a "substantial risk" and/ or that the failure to perceive such a risk constitutes "a gross deviation from the standard of care that a reasonable person would observe in the actor's situation." *Id.* § 2.02(d). Under the Model Penal Code's approach, a state would not punish conduct that amounts to only ordinary negligence, such as the conduct outlawed by California Penal Code section 192(c)(3) (1998).

**[14]** Like California, most states have several homicide offenses, including an involuntary manslaughter statute. The Fifth Circuit's study revealed that at least twenty state criminal codes require proof of recklessness to convict a person for the crime of involuntary manslaughter. *Dominguez-Ochoa*, 386 F.3d at 646. Thus, the modern view appears to be that recklessness is an element of contemporary manslaughter. 2 LaFave, *supra*, § 15.4(a). However, at least fifteen states have a manslaughter statute criminalizing conduct that falls short of recklessness: twelve of them permit punishment when the defendant has a mens rea that is akin to criminal or gross negligence,[12] but only *three* states permit punishment on proof of

---

[12]Me. Rev. Stat. Ann. tit. 17, § 203 (offense called "manslaughter," but requires recklessness or criminal negligence); Md. Code Ann. Crim. Law

only ordinary negligence.[13] When we look beyond statutes that use the term "manslaughter," we see that another thirty-four states have created homicide statutes that require a mens rea of less than recklessness, but call such offenses "negligent homicide" or something similar.[14] Even when we expand the

§ 2-209 (offense called "manslaughter by vehicle or vessel," but requires gross negligence); Miss. Code Ann. § 97-3-27 (offense called "manslaughter" but requires culpable negligence which is more than ordinary negligence as interpreted by *Johnson v. State*, 86 So. 863 (Miss. 1921)); Mo. Rev. Stat. § 565.024 (offense called "involuntary manslaughter" but requires criminal negligence or recklessness); N.M. Stat. Ann. § 30-2-3 (offense called "involuntary manslaughter" but requires criminal negligence); N.C. Gen. Stat. Ann. § 14-18 (offense called "manslaughter," but requires culpable negligence, not ordinary negligence, as interpreted by *State v. Davis*, 311 S.E.2d 311 (N.C. 1984)); Okla. Stat. Ann. tit. 21 § 716 (offense called "manslaughter in the second degree," but requires culpable negligence); 18 Pa. Cons. Stat. § 2504 (offense called "involuntary manslaughter" but requires gross negligence); R.I. Gen. Laws § 11-23-3 (offense called "involuntary manslaughter" but requires criminal negligence as interpreted by *State v. Ortiz*, 824 A.2d 473, 485-86 (R.I. 2003)); S.C. Code Ann. § 16-3-60 (offense called "involuntary manslaughter," but requires criminal negligence); Vt. Stat. Ann. tit. 13, § 2304 (offense called "manslaughter," but requires criminal negligence as interpreted by *State v. Stainslaw*, 573 A.2d 286, 291 (Vt. 1990)); Wash. Rev. Code § 9A.32.070 (offense called "manslaughter in the second degree" but requires criminal negligence).

[13]Idaho Code Ann. § 18-4006 (offense called "manslaughter" and requires only ordinary negligence as interpreted by *Haxforth v. State*, 786 P.2d 580, 581 (Idaho Ct. App. 1990)); Nev. Rev. Stat. Ann. § 484.3775 (offense called "vehicular manslaughter" and requires only ordinary negligence); Va. Code Ann. § 18.2-36.1 (offense called "involuntary manslaughter" and only requires ordinary negligence if driver is under the influence of drugs or alcohol, as interpreted by *Pollard v. Commonwealth*, 455 S.E.2d 283, 286 (Va. 1995)).

[14]Ala. Code § 32-5A-192 (1975) (offense called "homicide by vehicle or vessel" and requires recklessness or criminal negligence as interpreted by *Ex parte Edwards*, 816 So. 2d 98, 107 (Ala. 2001)); Alaska Stat. § 11.41.130 (offense called "criminally negligent homicide" and requires criminal negligence); Ariz. Rev. Stat. Ann. § 13-1102 (offense called "negligent homicide" and requires criminal negligence); Ark. Code Ann.

scope of our research to include these "negligent homicide" statutes, we see only eight more states that permit conviction when the defendant possesses a mens rea of only ordinary negligence.[15] We conclude that it is rare for a state to criminalize

§ 5-10-105(b)(1) (offense called "negligent homicide" and requires negligence that is a "gross deviation" from standard of care as interpreted by *Hunter v. State*, 19 S.W.3d 607, 667-68 (Ark. 2000)); Colo. Rev. Stat. § 18-3-105 (offense called "criminally negligent homicide" and requires criminal negligence); Conn. Gen. Stat. § 53a-58 (offense called "criminally negligent homicide" and requires criminal negligence); Del. Code Ann. tit. 11, § 631 (offense called "criminally negligent homicide" and requires criminal negligence); Ga. Code Ann. § 40-6-393 (offense called "homicide by vehicle" and requires criminal negligence for violation in the second degree as interpreted by *Conyers v. State*, 397 S.E.2d 423, 428 (Ga. 1990)); 720 Ill. Comp. Stat. 5/9-3 (offense called "reckless homicide" and requires recklessness, but recklessness is mandatorily presumed when driver causes vehicle to become airborne); Kan. Stat. Ann. § 21-3405 (offense called "vehicular homicide" and construed by *State v. Gordon*, 549 P.2d 886, 896 (Kan. 1976), to require more than simple negligence); Ky. Rev. Stat. Ann. § 507.040 cmt. (manslaughter no longer allowed "on the basis of ordinary negligence"); La. Rev. Stat. Ann. § 14:32 (offense called "negligent homicide" and requires criminal negligence); Mont. Code Ann. § 45-5-104 cmt. (offense called "negligent homicide" and requires "gross deviation" from standard of care); N.H. Rev. Stat. Ann. § 630:3 (offense called "negligent homicide" and requires criminal negligence); N.Y. Penal Law § 125.10 (offense called "criminally negligent homicide" and requires criminal negligence); N.D. Cent. Code § 12.1-16-03 (offense called "negligent homicide" and requires "gross deviation from acceptable standards of conduct" as defined by N.D. Cent. Code § 12.1-02-02); Ohio Rev. Code Ann. § 2903.06 ("vehicular manslaughter" contained in statute title, but referred to as vehicular homicide within statute, and requires more than ordinary negligence as construed by *State v. Self*, 679 N.E.2d 1173, 1177 (Ohio Ct. App. 1996)); Or. Rev. Stat. § 163.145 (offense called "criminally negligent homicide" and requires criminal negligence); Tenn. Code Ann. § 39-13-212 (offense called "criminally negligent homicide" and requires criminal negligence); Tex. Penal Code Ann. § 19.05 (offense called "criminally negligent homicide" and requires criminal negligence); Utah Code Ann. § 76-5-206 (offense called "negligent homicide" and requires criminal negligence); Wis. Stat. § 940.10 (offense called "negligent homicide" and requires criminal negligence).

[15]D.C. Code § 50-2203.01 (offense called "negligent homicide," and requires only ordinary negligence as interpreted by *Butts v. United States*,

ordinary homicide where the defendant's mens rea is only ordinary negligence.[16] Moreover, only a handful of those states classify such offenses as "manslaughter."[17]

[15] Of course, Gomez was not convicted of ordinary involuntary or vehicular manslaughter, as California defines it; he was convicted of vehicular manslaughter while intoxicated, a particular type of manslaughter. Some states have created special statutes to punish drunk driving homicides as "a number of states have enacted statutes creating the new crime of homicide by automobile." *See* 2 LaFave, *supra*, § 15.4(e) (stating that such a statute is "related to the crime of manslaughter but is not manslaughter proper"). Typically, such statutes require proof of intoxication while driving a vehicle and are punished less severely than manslaughter. 2 LaFave, *supra*, § 15.4(e). Commensurate with lesser punishment is a lesser mens rea requirement, where the state often permits conviction under the statute when the defendant has a mens rea that is less than recklessness. *Id.*

[16] We identify, however, only five states that have statutes similar to California's, requiring proof of only ordinary negligence[18] or less[19] and defining the offense as a type of

---

822 A.2d 407, 416 (D.C. 2003)); Haw. Rev. Stat. § 707-704 (offense called "negligent homicide in the third degree" and requires only ordinary negligence); Mass. Gen. Laws Ann. ch. 90, § 24G (offense called "homicide by motor vehicle" and requires only ordinary negligence as interpreted by *Commonwealth v. Carlson*, 849 N.E.2d 790, 795 (Mass. 2006), and distinguishes involuntary manslaughter as much more serious); Mich. Comp. Laws § 750.324 (offense called "negligent homicide" and requires only ordinary negligence); S.D. Codified Laws § 22-16-41 (offense called "vehicular homicide" and requires only ordinary negligence as interpreted by *State v. Two Bulls*, 547 N.W.2d 764, 766 (S.D. 1996)).

[16]*Supra* notes 13 (manslaughter statutes that require mens rea of ordinary negligence) and 15 (negligent homicide statutes that require same).

[17]*Supra* note 13.

[18]Va. Code Ann. § 18.2-36.1 (offense called "involuntary manslaughter" and only requires ordinary negligence if driver is under the influence

manslaughter. Two additional states punish homicide where the defendant had a mens rea of ordinary negligence, but both classify the offense as something other than manslaughter.[20] Eleven more states have drunk driving homicide statutes that require no mens rea at all or presume the necessary mens rea exists when the driver of a vehicle is intoxicated; none of these states classifies the offense as manslaughter.[21] Even

---

of drugs or alcohol, as interpreted by *Pollard v. Commonwealth*, 455 S.E.2d 283, 286 (Va. 1995)).

[19]N.Y. Penal Law § 125.12 (offense called "vehicular manslaughter in the second degree" and requires no element of mens rea if driver was intoxicated and intoxication resulted in killing of another person according to the "Practice Commentary" found at N.Y. Penal Law ch. 40, pt. Three, 2005 amends., under the subheading "vehicular manslaughter"); Conn. Gen. Stat. § 53a-56b (offense called "manslaughter in the second degree with a motor vehicle" and does not require proof of mens rea when driver is intoxicated as interpreted by *State v. Kristy*, 528 A.2d 390, 482-83 (Conn. Ct. App. 1987)); Tex. Penal Code Ann. § 49.08 (offense called "intoxication manslaughter" and requires no culpable mental state if driver was operating motor vehicle while intoxicated); Fla. Stat. § 316.193(3) (offense called "DUI manslaughter" and requires no proof of mens rea as interpreted by *State v. Hubbard*, 751 So. 2d 552, 562-64 (Fla. 1999)).

[20]Minn. Stat. § 609.21 (offense called "criminal vehicular homicide" and requires only ordinary negligence when driver of vehicle is under the influence); Md. Code Ann. Crim. Law § 2-503 (offense called "homicide by motor vehicle or vessel while under the influence of alcohol" and requires ordinary negligence).

[21]Haw. Rev. Stat. § 707-702.5 (offense called "negligent homicide in the first degree" and requires only proof of driving while intoxicated); Neb. Rev. Stat. Ann. § 28-306 (offense called "motor vehicle homicide" and strict liability for driving while under the influence of alcohol as interpreted by *State v. Ring*, 447 N.W.2d 908, 910-12 (Neb. 1989) (per curiam)); Iowa Code § 707.6A (offense called "homicide or serious injury by vehicle" and provides no mental state for convicting driver of vehicle who is intoxicated at time of accident); Wis. Stat. Ann. § 940-09 (offense called "homicide by intoxicated use of vehicle or firearm" and requires only driving of vehicle while intoxicated); N.H. Rev. Stat. Ann. § 630:3.II (offense called "negligent homicide" where negligence is per se shown by driving under the influence which causes death); La. Rev. Stat. Ann. § 14:32.1 (offense called "vehicular homicide" and no negligence need be proven if driver was intoxicated as interpreted by *State v. Taylor*, 463 So.

among three additional states criminalizing homicide by drunk driving that require proof of a culpable mental state *greater* than ordinary negligence, only one defines the offense as manslaughter.[22] It appears there is a growing trend of at least twenty states[23] that punish drunk driving homicides when the defendant possesses no culpable mental state or his mens rea is only ordinary negligence. But it is still exceedingly rare for such offenses to be classified as manslaughter.[24] Instead, it appears more common for state legislatures to create new offenses, such as vehicular homicide, to cover such conduct. *See* 2 LaFave, *supra*, § 15.4(e). This comports with the general trend, noted by LaFave and evident in the Model Penal Code, that the notion of manslaughter is reserved for conduct

---

2d 1274, 1275 (La. 1985)); Colo. Rev. Stat. § 18-3-106 (offense of "vehicular homicide" is a strict liability crime if death occurs as a proximate cause of driver being under influence of drugs and/or alcohol); Wis. Stat. Ann. § 940.09 (offense called "homicide by intoxicated use of a vehicle" and applies negligence per se when driving under the influence); Wyo. Stat. Ann. § 6-2-106 (offense called "aggravated homicide by vehicle" and requires only that person was intoxicated as predecessor statute was interpreted by in *Armijo v. State*, 678 P.2d 864, 869-70 (Wyo. 1984)); Utah Code Ann. § 76-5-207(2)(a) (offense called "automobile homicide, a third degree felony" and requires proof of intoxication and simple negligence); N.J. Stat. Ann. § 2C:11-5 (offense called "vehicular homicide" and requires recklessness, but recklessness presumed by virtue of intoxication).

[22]Utah Code Ann. § 76-5-207(3)(a) (offense called "automobile homicide, a second degree felony" and requires criminal negligence and proof of intoxication); Mont. Code Ann. § 45-5-106 (offense of "vehicular homicide while under influence" and requires negligence that is a gross deviation from the standard of care as negligently is defined under Mont. Code Ann. § 45-2-101); Ind. Code § 35-42-1-5 (offense of "involuntary manslaughter" requires more than negligence even when defendant intoxicated as interpreted by *Demmond v. State*, 333 N.E.2d 922, 924 (Ind. Ct. App. 1975)).

[23]*Supra* notes 18-21 (collecting statutes that require no proof of mens rea or proof of ordinary negligence to punish drunk driving homicides).

[24]*Supra* note 18-19 (only five states besides California).

that includes a more culpable mental state than mere negligence. *Id.* § 15.4(a).

2.

*Guidelines Treatment of Manslaughter*

**[17]** In its brief, the government argues that even if the contemporary meaning of manslaughter includes a mens rea that is greater than ordinary negligence, the drafters of the Sentencing Guidelines clearly intended for the term manslaughter to include Gomez's conviction. *See, e.g., Dominguez-Ochoa*, 386 F.3d at 647 (Pickering J., dissenting). We conclude the contrary is true; when the Guidelines have reason to distinguish between degrees of involuntary manslaughter, they recognize only two types: criminally negligent manslaughter and reckless manslaughter. *See* U.S.S.G. § 2A1.4 (providing distinct base offense levels for federal crime of involuntary manslaughter according to whether the defendant possessed mens rea of recklessness or criminal negligence); *see also Dominguez-Ochoa*, 386 F.3d at 643-44 (holding that § 2A1.4 should not be read as expression of drafters' intent to define manslaughter because drafters were merely creating base offense levels for federal crime of involuntary manslaughter). Consequently, even if we were to look to § 2A1.4 for guidance in this case, it would only strengthen our conclusion that a homicide which requires proof of only ordinary negligence is not manslaughter.

**[18]** If the drafters of § 2L1.2 cmt. 1(b)(iii) intended all homicides to be treated as "crimes of violence," then they would have listed "homicide" as the enumerated offense. As it stands, they listed only "murder" and "manslaughter." *Id.* This limitation is consistent with the goal of the 2001 amendments to provide more graduated sentencing enhancements under § 2L1.2, where the drafters removed from the sixteen-level enhancement definition of a "crime of violence" both risk-based tests that capture less culpable defendants. It is

unsurprising, then, that we should conclude that homicide committed with a mens rea of only ordinary negligence is not included among the enumerated offenses listed in § 2L1.2(b).

D.

**[19]** Since Gomez's conviction under California Penal Code section 192(c)(3) (1998) for "vehicular manslaughter while intoxicated without gross negligence" is an offense that requires only proof of ordinary negligence, it cannot fall within the contemporary meaning of manslaughter as enumerated in U.S.S.G. § 2L1.2 cmt. 1(B)(iii). Therefore, the district court erred in finding that it was a "crime of violence" for the purposes of applying a sixteen-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii).

IV.

**[20]** Neither Gomez's conviction for a "drug trafficking offense" nor his conviction under California Penal Code section 192(c)(3) justifies the application of a sixteen-level enhancement under U.S.S.G. § 2L1.2(b). Consequently, Gomez's sentence is vacated and the case is remanded to the district court for re-sentencing in a manner consistent with our opinion.

REVERSED and REMANDED.

---

O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:

I concur in the court's holding in Part I that Gomez-Leon was "lawfully deported" under U.S.S.G. § 2L1.2(b), and in its conclusion in Part II that his state sentence for violating Cal. Health & Safety Code § 11379 did not exceed thirteen

months, thus excluding him from a sentencing enhancement under U.S.S.G. § 2L1.2(b)(1)(A).

However, notwithstanding the government's concession to the contrary, I respectfully disagree with the court's articulation in Part III that Gomez-Leon's conviction for vehicular manslaughter without gross negligence under Cal. Penal Code § 192(c)(3) (1998) does not constitute a felony "crime of violence" pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii). As engaging as I find the court's historical analysis of the requisite *mens rea* for a conviction of manslaughter and the court's exegesis of state law, the plain language of the Sentencing Guidelines speaks for itself. Section 2L1.2 cmt. 1(B)(iii) of the Guidelines unequivocally lists manslaughter as a "[c]rime of violence." "If the Guidelines writers had intended for manslaughter to be limited, they could easily have inserted the word 'voluntary' in front of the word 'manslaughter' or inserted a parenthetical, 'involuntary manslaughter not included.' " *United States v. Dominguez-Ochoa*, 386 F.3d 639, 648 (5th Cir. 2004) (Pickering, J., dissenting).

The government's concession that Gomez-Leon's conviction does not rise to the level of a "crime of violence" rests on its assertion that this case is controlled by *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006) (en banc). *Fernandez-Ruiz*, however, was not a sentencing case, nor did it involve a construction of the term "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii). Rather, there we construed the meaning of "crime of violence" under 18 U.S.C. § 16(a), *see Fernandez-Ruiz*, 466 F.3d at 1132, which does not include a similar provision listing enumerated qualifying offenses. Accordingly, *Fernandez-Ruiz* is irrelevant to an assessment of whether Gomez-Leon's conviction under Cal. Penal Code § 192(c)(3) (1998) constitutes an enumerated "crime of violence" under the Sentencing Guidelines.

Because the Guidelines writers did not make a distinction between types of manslaughter in U.S.S.G. § 2L1.2 cmt

1(B)(iii), even though they explicitly did so elsewhere in the Guidelines, *see, e.g.*, U.S.S.G. § 2A1.4 (delineating between negligent and reckless involuntary manslaughter), I cannot join the court's decision to reverse the sentence imposed by the district court in this case.